### Donna H. TIBBETTS

v.

### David R. TIBBETTS.

Supreme Judicial Court of Maine.

Sept. 13, 1979.

---

Paine & Lynch, Errol K. Paine (orally), Andrew M. Mead, Bangor, for plaintiff.

Stearns, Finnegan & Needham, P. A., by John A. Woodcock, Jr. (orally), Bangor, for defendant.

Before McKUSICK, C. J., and WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

NICHOLS, Justice.

This appeal from a divorce judgment focuses upon the proper characterization and treatment in that judgment of a sum of money which during marriage one spouse had contributed toward the married couple's acquisition of certain real estate.

The Plaintiff, Donna H. Tibbetts, appeals from a Superior Court order in Penobscot County, which affirmed in part the District Court decree granting her a divorce from the Defendant, David R. Tibbetts, but for the second time remanded the cause to District Court for a minor amendment to that portion of its decree which related to the distribution of property.[1]

■ Upon the remand of this cause from a prior appeal to the Superior Court,

and at the direction of the latter court, the District Court specifically addressed the disposition of $5,000 which allegedly the wife had invested in certain real estate held in joint tenancy with her husband. On the wife's second appeal to Superior Court, that court substantially sustained the District Court's decree as amended, and from that second order of Superior Court[2] the cause comes here on the wife's appeal.

We sustain her appeal.

The factual background of the controversy can with some effort be derived from the sparse record before us. When the original divorce judgment was entered in District Court the wife claimed an appeal because the judgment did not clearly reflect the treatment accorded $5,000 of the wife's funds which during the marriage was involved in the purchase by the married couple as joint tenants of certain real estate. The Superior Court remanded to District Court for further findings of fact. There upon the District Court found the wife's money had been "involved" in this joint purchase but declined "to distribute or involve itself in this property." The wife appealed again to Superior Court, urging that by such abstention the District Court was not "setting apart" the jointly held property as ordained by our statute relating to marital property.[3]

1. A controversy between the same parties as to the wife's entitlement to support pending divorce is the subject of *Tibbetts v. Tibbetts*, Me., 406 A.2d 78, a companion case also decided by our Court this day.

2. This order of the Superior Court is not interlocutory as was the order in *Gulesian v. Gulesian*, Me., 377 A.2d 119, 120 (1977). Upon remand the District Court's function was merely to amend the prior decree in a specific manner directed by the Superior Court and to enter judgment. The judgment was fixed and final since it fully decided and disposed "of the whole cause, leaving no further questions for the future consideration and judgment of the court." *Gilpatrick v. Glidden*, 82 Me. 201, 203, 19 A. 166, 167 (1889). Future proceedings cannot affect the rights of the parties thereunder. *Hazzard v. Westview Golf Club, Inc.*, Me., 217 A.2d 217, 222–223 (1966). *See also Zillert v. Zillert* Me., 395 A.2d 1152, 1153, n. 2 (1978).

Until the setting apart of the marital property is completed there is no final judgment in the divorce action. *Corder v. Corder*, 546 S.W.2d 798, 806 (Mo.Ct.App.1977). Whether the purpose is a serious or a frivolous one, the two aspects of the cause cannot be separated. *Cf. MacDougall v. MacDougall*, Me., 403 A.2d 783 (1979)(interlocutory order of divorce court not appealable).

3. 19 M.R.S.A. § 722–A (Supp.1978), which is our statute relating to the disposition of marital and non-marital property at divorce, essentially tracks § 307 of the Uniform Marriage and Divorce Act as promulgated in 1970. It provides in pertinent part:

1. In a proceeding: (a) for a divorce, . . . the court shall set apart to each spouse his property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors including:

. . . . .

The Superior Court rejected the wife's argument and mandated only minor amendments to correct a factual error and to clarify the basis of the decision. It ordered the following language substituted at the pertinent point in the judgment:

> Although the above four pieces of property were acquired subsequent to the marriage, their acquisition involved Five Thousand Dollars ($5,000.00) contributed by the Plaintiff. Thus, they are not marital property, and the legal interests of the parties as joint tenants are recognized as being sufficiently set apart to each without the Court making any division or distribution thereof.

Subsequent to that order, and in perfecting their appeal to this Court, through counsel the parties modified their agreed statement of facts to reflect that the $5,000 was contributed to their purchase of but one property, the "Tibbetts homestead," in Orrington, Maine; and that the husband contributed all the consideration for the purchase of the remaining three parcels. This change does not affect the legal issue before us. All four parcels were acquired by the parties in joint tenancy after their marriage and prior to the effective date of 19 M.R.S.A. § 722–A, which date was January 1, 1972.[4]

Our disposition of this appeal will require further proceedings in the District Court, and the facts set forth in the "Further Agreed Statement of Counsel" will be considered by the District Court at that time. Cf. *Winter v. Casco Bank & Trust Co.*, Me., 396 A.2d 1020, 1023, n. 4 (1978).

■ The initial error of the Superior Court was its interpretation that the involvement of the wife's $5,000 (which was not the total price) in the purchase of the real estate, completely excluded this property from the marital property category. While 19 M.R.S.A. § 722–A(2)(B) excludes from marital property all property "acquired in exchange for property acquired prior to the marriage," it does not follow that where a part of the property exchanged was non-marital, the entire property acquired is, as a result, non-marital.

■ The application and meaning of the words "acquired in exchange for" in the factual matrix before us forms the crux of the interpretative problem. Certain factual aspects overlooked in the proceeding below are in fact determinative of the proper disposition of this parcel of real estate.

The key term here, "acquired in exchange for," carries a heavy baggage of meaning. We addressed a related problem in *Young v. Young*, Me., 329 A.2d 386 (1974). There real estate was acquired in joint tenancy during a marriage. From funds acquired before the marriage each spouse contributed toward the purchase price of the property; the balance was realized from a mortgage loan. The trial court treated this real estate as "marital property" subject to divi-

---

2. For purposes of this section only, "marital property" means all property acquired by either spouse subsequent to the marriage except:
 A. Property acquired by gift, bequest, devise or descent;
 B. Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise or descent;
 C. Property acquired by a spouse after a decree of legal separation;
 D. Property excluded by valid agreement of the parties; and
 E. The increase in value of property acquired prior to the marriage.
3. All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection 2.

4. Neither of the parties have invoked the rule that conveyance of property by one spouse to both spouses in joint tenancy raises a presumption of the gift of a one-half interest. *See* *Greenberg v. Greenberg*, 141 Me. 320, 43 A.2d 841 (1945); *Coates v. Coates*, 64 Ill.App.3d 914, 21 Ill.Dec. 656, 381 N.E.2d 1200, 1203 (1978). Cf. *Young v. Young*, Me., 329 A.2d 386, 390 (1974). We have no occasion, therefore, to address that rule because it appears that husband and wife are agreed no gift was in fact intended here.

sion pursuant to 19 M.R.S.A. § 722–A. We sustained an appeal from this ruling, holding that to the extent the real estate had been acquired in exchange for property of either spouse acquired prior to marriage the presumption in 19 M.R.S.A. § 722–A(3) is overcome and the property cannot be marital property. *Id.* at 389–391.

Such property is non-marital *to the extent* that it was acquired in exchange for property acquired prior to marriage. Thus a single item of property may be to some extent non-marital and the remainder marital. Accordingly, where property is acquired in exchange for both marital property and non-marital property, the portion attributable to each must be determined. That portion of the property acquired in exchange for non-marital property must then be "set apart" as directed by 19 M.R.S.A. § 722–A(1).[5]

■ This approach is required by the language of 19 M.R.S.A. § 722–A(2)(B). That provision of our statute excludes from marital property only that property acquired in exchange for property acquired prior to the marriage or by gift, bequest, devise or descent. Adoption of the approach erroneously taken by the Superior Court in this case would lead to the treatment of marital property as non-marital to the extent that both were mixed in the acquisition of property acquired subsequent to the marriage.

This approach is not authorized by the statute and would be inequitable. This provision was designed to mandate that the divorce court determine how the property of the parties will be apportioned. *Zillert v. Zillert*, Me., 395 A.2d 1152 (1978).

The divorce court must, therefore, separate marital and non-marital property by tracing from the evidence adduced the contributions each may have made to the acquisition of a particular item. This undertaking is considerably eased by the presumption created by 19 M.R.S.A. § 722–A(3); yet certain cases, such as that before us, will require the tracing of the specific contribution and a determination of both the original purchase price of the property and its present value.

■ In thus interpreting the process of separating marital and non-marital property which has been conjoined in the acquisition of a single property during marriage, we find guidance in the fundamental purposes underlying the approach to disposition of the spouses' property mandated by 19 M.R.S.A. § 722–A and Section 307 of the Uniform Marriage and Divorce Act as originally promulgated in 1970.[6] This research suggests that our choice is between a static or a dynamic interpretation of the term "acquisition." We adopt a dynamic interpretation in that the proper characteriza-

---

5. The following example illustrates the necessary tracing. For $20,000 a husband and wife acquire a parcel of real estate. A down payment of $5,000 is contributed by the wife from property acquired prior to the marriage and the remaining $15,000 is financed through credit. One-quarter of that parcel is the wife's non-marital property. If the property appreciates in value to $30,000 and the parties contribute an additional $5,000 of marital property toward its purchase, the following division would be required. One-quarter of the value of the parcel or $7,500 is non-marital property to be set apart to the wife. Assuming a remaining mortgage of $10,000, since $10,000 in total has been contributed toward purchase of the parcel valued initially at $20,000, there will remain an equity of $12,500 of marital property to be divided.

6. The original provision of the Uniform Act was withdrawn in 1973 and replaced with two alternative provisions. Alternative A was rec-

ommended generally for adoption, in contrast to Alternative B recommended for community property states. The provision eliminated the distinction between marital and non-marital property creating a great hodgepodge of all the assets of the spouses for distribution among them. *See* Commissioner's Comment to 1973 Amendment to Section 307 of the Uniform Marriage and Divorce Act; *see* "1971 Midyear Report and Recommendation of the Family Law Section of the ABA House of Delegates on the Uniform Marriage and Divorce Act," 5 *Fam. L.Q.* 133, 138 (1971) (recommending extensive study of section 307 and commenting that the term "marital property" was unclear). *See generally* Inker, Walsh & Perocchi, "Alimony and Assignment of Property: The New Statutory Scheme in Massachusetts," 10 *Suffolk U.L.Rev.* 1 (1975)(discussing Massachusetts provision substantially adopting the Uniform Act as amended).

tion of property as marital or non-marital may shift as individual items of property, marital or non-marital, are contributed by the spouses in exchange for the property acquired.

 The approach we choose comports with the general goals of the Uniform Act. The shared enterprise or partnership theory of marriage is a major guiding principle in the separation and division of property at divorce. *Handbook of the National Conference of Commissioners on Uniform State Laws* 178 (1970); Krauskopf, "A Theory for 'Just' Division of Marital Property in Missouri," 41 *Mo.L.Rev.* 165, 166 (1976) (Missouri in 1973 enacted legislation substantially tracking the Uniform Act); *cf.* Comment, "The Federal Income Tax Consequences of Property Settlements in Common Law States and under the Uniform Marriage and Divorce Act: A Proposal," 29 *Me.L.Rev.* 73, 91, 107 n. 212 (1977); Foster & Freed, "Marital Property Reform in New York: Partnership of Co-Equals?" 8 *Fam. L.Q.* 169 (1974). The definition of marital property contained in our § 722–A has its roots in a community property rule. *Id.*; *see generally* W. de Funiak & M. Vaughn, *Principles of Community Property* 114–123 (2d ed. 1971). The decisions from community property jurisdictions as well as those adopting the Uniform Act thus are illuminating in the interpretation of our own Act.

Unfortunately, the practice of these jurisdictions is not wholly uniform. In our specific context here two principal theories appear to invigorate the cases, the pure incep-

tion of title rule and the source of funds rule. *See* Krauskopf, "Marital Property at Marriage Dissolution," 43 *Mo.L.Rev.* 157, 180 (1978); de Funiak & Vaughn, *supra* at 133. We had occasion to refer to the inception of title rule in *Young v. Young,* Me., 329 A.2d 386, 391 (1974), where it was utilized to determine the character of certain property at divorce. This decision did not, however, address the problem of selection between the somewhat conflicting rules mentioned above as that problem is presented here.

The pure inception of title rule focuses on the state of the title when it is first taken. Thus, if title to the property is acquired prior to marriage, it remains wholly non-marital in character, even if marital funds are invested in its maintenance or toward its purchase.[7] The value of this right has been quantified either in terms of the amount of the contribution from the marital property or the enhanced value attributable to the community or marital expenditures. *See* de Funiak & Vaughn, *supra* at 133.

On the other hand, the source of funds rule grants to each estate, marital and non-marital, a *pro tanto* interest in the ratio that the payments on the purchase price made with community funds bears to the payments made with separate funds. The community interest is determined by comparing the ratio of community and separate investment in the property.[8]

The latter theory is the more recently formulated and appears to offer a more flexible and more equitable approach.[9]

7. *See, e. g., Cain v. Cain,* 536 S.W.2d 866 (Mo. Ct.App.1976); *Colden v. Alexander,* 141 Tex. 134, 171 S.W.2d 328 (1943); *Gillespie v. Gillespie,* 84 N.M. 618, 506 P.2d 775 (1973); *Fisher v. Fisher,* 86 Idaho 131, 383 P.2d 840 (1963). These cases conclude that the marital estate retains a right to reimbursement, which may be supported by a lien placed on the property. *See generally* Bartke, "Yours, Mine and Ours— Separate Title and Community Funds," 44 *Wash.L.Rev.* 379 (1969).

8. *In re Marriage of Jafeman,* 29 Cal.App.3d 244, 105 Cal.Rptr. 483, 491 (1972); *Forbes v. Forbes,* 118 Cal.App.2d 324, 257 P.2d 721 (1953); *Vieux v. Vieux,* 80 Cal.App. 222, 251 P. 640, 642 (1927); *Baize v. Baize,* 460 S.W.2d 255

(Tex.Ct.Civ.App.1970); *Carter v. Grabeel,* 341 S.W.2d 458 (Tex.Ct.Civ.App.1960); *Gapsch v. Gapsch,* 76 Idaho 44, 277 P.2d 278 (1954); *In re Dougherty's Estate,* 27 Wash.2d 11, 176 P.2d 335 (1947); *Jacobs v. Hoitt,* 119 Wash. 283, 205 P. 414, 416 (1922); Shermack, "New Mexico Community Property Law: The Senate Interim Committee Report," 15 *La.L.Rev.* 559 (1955); *cf. Smith v. Smith,* 497 S.W.2d 418, 419 (Ky. 1973); *Painter v. Painter,* 65 N.J. 196, 320 A.2d 484, 493 n. 4 (1974); *see generally* de Funiak & Vaughn, *supra* at 133–134.

9. The inception of title rule provides the initial premise on which the characterization is based. Certainly our community property states are all in accord that if the right of a spouse to

The partnership theory, upon which the law of community property and this provision of the Uniform Marriage and Divorce Act is based, requires that the marital estate be entitled to a proportionate share in the value of property where its equity interest was partially acquired by marital funds. Where the marital estate chooses to invest its funds in certain property together with non-marital funds, the marital estate is entitled to a proportionate return on its investment. Note, "Dissolution of Marriage—Division of Property which Has Increased in Value," 42 *Mo.L.Rev.* 479, 484 (1977). The marital and non-marital estates have each made investments from which they are entitled to the full benefit and return. *See generally* Bartke, *supra,* note 7.

A further complication may be interjected into this analysis by the use of credit transactions. Where property is acquired on credit, its characterization depends upon the nature of the agreement extending the credit. Where the credit obligation is not shown to be the separate and sole obligation of one spouse, then the credit funds are presumed to be marital property and thus that portion of the property acquired is marital property.[10] The portion of the property acquired in exchange for marital credit and at the time of the divorce not yet fully paid with either marital or non-marital funds is, therefore, marital property. This is, of course, only significant where the property has so appreciated in value that the value of the portion acquired on credit exceeds the amount of the credit itself.

> the property is initiated before marriage, the nature of the property is fixed at that time as separate property and it comes into the marriage, so to speak, as of that nature. de Funiak & Vaughn, *supra,* at 131.
> There is clearly a split of authority, however, where initial acquisition of the property preceding the marriage is followed by completion of the acquisition during the marriage with the further consideration coming from community property. de Funiak & Vaughn, *supra* at 133. Our analysis above has starkly outlined this split of authority. We add this footnote to stress that the inception of title rule is still the basic principle and that the source of funds rule forms an equitable exception.

Our interpretation of the term "acquisition" has led us up and down the American West and even to the shores of Old Spain. It appears that the courts of our community property states have not with ease adapted to the realities of complex modern transactions and relationships. We conclude that in fairness to both spouses "acquisition" must not arbitrarily and finally be fixed on the date that a legal obligation to purchase is created. *See, e. g., Cain v. Cain,* 536 S.W.2d 866, 872 (Mo.Ct. App.1976). Rather, "acquisition" should be recognized as the on-going process of making payment for acquired property. Characterization of the property acquired will then depend on the source of each contribution as payments are made.

Having completed its separation of the marital and non-marital property of the parties in a manner consistent with the principles outlined in this opinion, the divorce court must then set apart the non-marital property to each spouse and divide the marital property in an equitable manner between them.

The discretion of the divorce court in the division of marital property has received extended treatment in our recent opinion in *Zillert v. Zillert, supra.*[11]

The setting apart of the non-marital property by the divorce court has not heretofore received comparable attention. We note at the outset that the provision of the Uniform Marriage and Divorce Act upon which 19 M.R.S.A. § 722-A is based uses

**10.** *Carter v. Grabeel,* 341 S.W.2d 458, 460 (Tex. Ct.Civ.App.1960); *In re Dougherty's Estate,* 27 Wash.2d 11, 176 P.2d 335, 339 (1947); *Ray v. United States,* 385 F.Supp. 372, 377 (S.D.Tex. 1974). Cf. *Coates v. Coates,* 64 Ill.App.3d 914, 381 N.E.2d 1200, 1204 (1978).

**11.** We need not expand upon those observations here other than to note that rarely would it be proper to leave the parties as joint tenants; rather, a tenancy in common should be normally decreed if no further division is considered desirable. *See Corder v. Corder,* 546 S.W.2d 798 (Mo.Ct.App.1977); *Davis v. Davis,* 544 S.W.2d 259, 264 (Mo.Ct.App.1976).

the term "assign" where the Maine statute employs the term "set apart." The two terms would appear to be largely synonymous since the Commissioners' Note to Section 307 of the Uniform Act indicates that the court is directed to "set apart" to each spouse all his or her property not defined as marital.

■ The distinction, then, is that with respect to the non-marital property, the divorce court has no discretion in its allocation; it must be transferred to the spouse owning it so far as this is practicable. With respect to the marital property, on the other hand, the divorce court has discretion to divide it as the court deems just after considering all relevant factors.

■ Under some circumstances the court may require that the non-marital property be extricated by a sale or partition, or by imposition of a lien, but we do not suggest that this must be done in every case. Often in the course of the division of marital property the "setting apart" of the non-marital property may be accomplished by allowing the other spouse additional property.

■ In the case before us it appears that there are other substantial assets of the parties which may well make possible a just division of the marital property without imposing a lien on the Tibbetts homestead in order to assure reimbursement of the non-marital estate, and without a sale or partition of that homestead.[12] Therefore, the "setting apart" of the wife's $5,000 involved in the acquisition of this homestead in Orrington can be left to the divorce court, guided in its discretion by the principles summarized herein, and mindful of the purposes of the statute here invoked.

The entry will be:

Appeal sustained.

Judgment vacated.

Remanded to Superior Court to be remanded in turn to District Court for further proceedings consistent with the opinion herein.

POMEROY and DELAHANTY, JJ., did not sit.

---

**12.** *Cf. Cain v. Cain*, 536 S.W.2d 866, 871 (Mo. Ct.App.1976); *see Baize v. Baize*, 460 S.W.2d 255, 256 (Tex.Ct.Civ.App.1970); Krauskopf, "A Theory for 'Just' Division of Marital Property in Missouri," 41 *Mo.L.Rev.* 165, 173 (1976); Annot., 54 A.L.R.2d 416 (1954).