Alan GRISHMAN

v.

Nancy E. GRISHMAN.

Supreme Judicial Court of Maine.

Oct. 22, 1979.

---

**15.** *See Labbe v. Nissen Corp., supra* at 571; *Kulko v. California Superior Court, supra,* 436 U.S. at 92, 98 S.Ct. 1690.

Roderick H. Potter, Saco (orally), Cole & Daughan by Francis P. Daughan, Wells, for plaintiff.

J. Armand Gendron, Sanford (orally), Patrick L. J. Veilleux, Kittery, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, GODFREY and NICHOLS, JJ.

NICHOLS, Justice.

This appeal raises the novel issue of whether a divorce court may properly treat as marital property, which is to be justly divided in the divorce judgment, an interest in real estate that one party acquired prior to his marriage and at a time when the two parties were unmarried cohabitants.

The Plaintiff, Alan Grishman, is a concert violinist and a professor of music. The Defendant, Nancy E. Grishman, some twelve years his junior, had been employed earlier in the public schools as a guidance counselor. While in graduate school at the University of New Hampshire she worked for the department of music where the Plaintiff taught. The couple commenced "living together" and soon combined their respective savings and checking accounts. On June 18, 1972, at San Juan, Puerto Rico, the parties were married. In 1974, shortly after they moved from New Hampshire to Maine, a daughter was born to them.

On November 18, 1977, the husband commenced this divorce proceeding in the District Court (Tenth District). The wife promptly counterclaimed for divorce and removed the proceeding to the Superior Court (York County). In November, 1978, the case came on for hearing on the wife's counterclaim. Her prayer for divorce was not contested by her husband. The parties had strong differences, however, on the issues of child support, alimony and the disposition of their properties at divorce.

Central to this controversy is a 10-acre lot of land on Durham Point in the university town of Durham, New Hampshire. The Superior Court found this lot to be worth $35,000 when a divorce between these parties was adjudged November 17, 1978. From the second of his three marriages, and before these parties began living together, the Plaintiff had acquired a one-half interest in the Durham land. While these parties were living together and before their marriage, the Plaintiff acquired title to the other half-interest, paying for it April 20, 1972, with a check which he drew on the parties' joint checking account.

When in the divorce judgment the Superior Court concluded that the one-half interest later acquired was "marital property for the purpose of dividing marital property" and proceeded to include one-half the value of this lot ($17,500) in its computation of the parties' total equity in real estate, the Plaintiff appealed to this Court. The Defendant seasonably cross-appealed.

We sustain both appeals.

For the pertinent law we look to 19 M.R. S.A. § 722–A (Supp.1978), which is our statute relating to the disposition of marital and non-marital property at divorce, and which essentially tracks § 307 of the Uniform Marriage and Divorce Act as promulgated in 1970.[1]

▆ In such cases as *Zillert v. Zillert*, Me., 395 A.2d 1152 (1978) and *Tibbetts v. Tibbetts*, Me., 406 A.2d 70 (1979), we have had occasion to summarize the mandates of that statute. Three steps are required. The divorce court must:

(1) determine what of the parties' properties is marital and what is non-marital, including the contributions each may have made to the acquisition of the marital property, and recognizing the contribution of a spouse as a homemaker;

(2) set apart to each that spouse's non-marital property; and

(3) divide the marital property between them in such proportion as the court deems just.[2]

We have observed that until these steps are completed there is no final judgment in the divorce proceeding. The disposition of property cannot be put off until another day. *Tibbetts v. Tibbetts, supra.*[3]

▆ In the appeal before us we focus upon the first of these steps because the husband challenges the divorce court's conclusion that the interest in the Durham real estate acquired while the parties were unmarried cohabitants was marital property.[4] There the court erred.

---

1. In pertinent part 19 M.R.S.A. § 722–A (Supp. 1978) mandates:

    In a proceeding . . . for a divorce . . the court shall set apart to each spouse his property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors including:
    A. The contribution of each' spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;
    B. The value of the property set apart to each spouse; and
    C. The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children. . .

    For purposes of this section only, "marital property" means all property acquired by either spouse subsequent to the marriage except:
    A. Property acquired by gift, bequest, devise or descent;
    B. Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise or descent;
    C. Property acquired by a spouse after a decree of legal separation;
    D. Property excluded by valid agreement of the parties; and

    E. The increase in value of property acquired prior to the marriage.

2. To have an equitable distribution of the marital property, as the Montana court has pointed out, it is appropriate for the divorce court to first determine the net worth of the parties at the time of their divorce. Without such a finding, an appellate court has difficulty in determining whether the property was equitably divided at that time. *Vivian v. Vivian*, Mont., 583 P.2d 1072, 1074 (1978).

3. So integral is the division of marital property in the divorce judgment, and so important is it to the goal of insuring a just economic settlement before granting freedom from the marital state, that the Missouri Court of Appeals has held that where a trial court has entered a decree that only granted the dissolution itself, and did not address the property issues, it was not a final judgment and was not appealable. *Corder v. Corder*, 546 S.W.2d 798, 806 (Mo. App.1977). The clear import of that opinion is that the marriage is not dissolved until a judgment is entered which disposes of the marital property. Krauskopf, "Marital Property at Marriage Dissolution," 43 *Mo.L.Rev.* 157 (1978).

4. As to jurisdiction of the divorce court to determine the disposition of real estate located in another state *see Fall v. Eastin*, 215 U.S. 1, 14, 30 S.Ct. 3, 54 L.Ed. 65 (1909), 23 L.R.A. (N.S.)

The wife has cited no case decided under a statute modeled, like our § 722–A, after § 307 of the Uniform Marriage and Divorce Act which reaches that result. Indeed, the brief filed in behalf of the wife acknowledges that our § 722–A expressly defines "marital property" in terms of "property acquired by either spouse subsequent to the marriage." We cannot expand the definition the Legislature has provided to encompass property to which the husband took title before this couple were married.[5] We find nothing in the law of community property, from which this provision of the Uniform Act was derived, that makes it appropriate to treat as an asset of the marriage partnership a property interest which one party acquired during the period of a nebulous relationship between them.[6] Such a result would only introduce new uncertainties into our law.

We give the language of the statute its plain meaning.

Because of the divorce court's error in classifying this property interest as marital, rather than non-marital, and in so treating this interest as that court proceeded with its division of marital property, the husband's appeal must be sustained and the judgment entered November 17, 1978, must be vacated.

■ To protect the rights of the wife in her claim for alimony, her cross-appeal must also be sustained. When this cause is remanded to the Superior Court for the entry of a new divorce judgment upon the record which the parties have already made there, the presiding justice will in no way be impeded by his decision of last November to make no express award of alimony to the wife. This decision, requiring him to reconsider his earlier disposition of property, has changed the context in which last November he refrained from granting alimony. *Young v. Young*, Me., 329 A.2d 386, 392 (1974). By sustaining the cross-appeal as well as the appeal to this Court, he will be afforded full latitude to grant or to refrain from granting alimony.[7]

It is evident from the judgment entered last November that the Superior Court concluded there was "unpaid support" due from the husband to the wife. She is entitled to recover from him such arrearages as the Superior Court finds. *Tibbetts v. Tibbetts*, Me., 406 A.2d 70 (1979).

■ In determining a "just" division of marital property the divorce court may properly consider a wide range of pertinent factors. Notwithstanding the discretion so vested in it, the divorce court will do well in such a case as this to particularize the several amounts awarded for arrearages in support, for alimony, and in division of the marital property. Casting the judgment in specific amounts will make the result more comprehensible for the litigants and will facilitate appellate review as often as such review may become necessary.

The entry is:

924; *Becker v. Becker*, 576 S.W.2d 255, 257 (Ky.App.1979).

5. *See Cain v. Cain*, 536 S.W.2d 866, 869 (Mo. App.1976).

6. *See Hewitt v. Hewitt*, 77 Ill.2d 49, 31 Ill. Dec. 827, 394 N.E.2d 1204 (1979) (expresses public policy disfavoring grant of mutually enforceable property rights to knowingly unmarried cohabitants); Krauskopf, "A Theory for 'Just' Division of Marital Property in Missouri," 41 *Mo.L.Rev.* 165 (1976). *But see* comment, "Meretricious Relationships—Property Rights: A Meretricious Relationship May Create an Implied Partnership," 48 *Wash.L.Rev.* 635 (1972). *See also* comment, "The Property Rights of Unmarried Cohabitants—A Proposal," 14 *Cal. Western L.Rev.* 485 (1979).

7. There is conflicting testimony as to the source of funds in the parties' joint checking account upon which account the husband drew in 1972 to acquire his second one-half interest in the Durham real estate. The wife represented that she had made substantial deposits to that account. The husband described her contributions as "token" deposits. The disposition we make of this appeal and this cross-appeal leaves the way clear for the presiding justice to determine upon the evidence before him whether or not the one-half interest to which the husband then took title was impressed with a resulting trust for the benefit of the wife. *Wood v. LeGoff*, 152 Me. 19, 21, 121 A.2d 468 (1956); *Restatement (Second) of Trusts* § 440 (1957).

Appeal and cross-appeal sustained.

Judgment vacated.

Remanded to Superior Court for further proceedings consistent with the opinion herein and for the award of reasonable counsel fees.

Costs on appeal allowed to Plaintiff-Appellant.

ARCHIBALD and GLASSMAN, JJ., did not sit.