**Rhoda F. GRANT**

v.

**William R. GRANT.**

Supreme Judicial Court of Maine.

Argued June 3, 1980.

Decided Jan. 2, 1981.

Markos & Roy, Peter R. Roy (orally), Ellsworth, for plaintiff.

Libhart, Ferris, Dearborn, Willey & Ferm, Wayne P. Libhart (orally), William N. Ferm, Ellsworth, for defendant.

Before McKUSICK, C. J., and WERNICK, NICHOLS and GLASSMAN, JJ.

WERNICK, Justice.

Defendant William R. Grant has appealed from the child support and property division provisions of a divorce judgment entered in the Superior Court (Hancock County) on November 29, 1979. The appeal raises three issues: (1) whether the court's order for support of children is erroneous because it erroneously conceived the legal obligation of the wife to contribute to the support of the children; (2) whether the court, in light of Section 722–A(4),[1] had authority to divide any property of the Grants, even if it was correctly held to be marital property, acquired prior to January 1, 1972, in the absence, as here, of a "request . . . in writing" made by "both parties" that the court "order disposition of [such] marital property . . ."; and (3) whether the court committed error in classifying as marital property, subject to division under 19 M.R.S.A. § 722–A (Supp.1979–80), certain real estate known as the "Coyle house" acquired during their marriage by the defendant and the plaintiff Rhoda F. Grant, through a devise to them as joint tenants.

On the first and second issues the Court is unanimous in its opinion that the Superior Court acted without error. On the third issue, the Superior Court's classification of the "Coyle house" as marital property, Chief Justice McKusick and I are of the opinion that the Superior Court committed error but Justices Glassman and Nichols disagree concluding that there was no error. No error, therefore, being found by a majority of the Court, the judgment of the Superior Court is affirmed.

Rhoda and William Grant were married in Maine on December 2, 1967, and they resided in this State during all of their marriage. They have three minor children. In August, 1978, Rhoda instituted an action for divorce on the grounds of cruel and abusive treatment and irreconcilable differences. At the time of the divorce hearing,

1. 19 M.R.S.A. § 722–A(4) provides in relevant part:

"If both parties to a divorce action also request the court in writing to order disposition of marital property acquired by either or both of the parties to the divorce prior to January 1, 1972, . . . the court shall . . . order such disposition . . . ."

the spouses had been separated for a year; Rhoda had been residing at the "Coyle house" and William had been living at the family residence located less than a half mile away.

The Superior Court justice granted a divorce to Rhoda on the ground of irreconcilable differences. He classified all of the Grants' substantial property as "marital" and distributed it approximately equally between them. The distribution to Rhoda included the "Coyle house", furnishings, and adjoining land. Included in the property distributed to William was the family home, its furnishings, and the adjoining land. Rhoda was awarded $1.00 per year as alimony.

The justice also found:

"Since under the current law of the State of Maine, the Defendant-father is liable for the full support of the minor children, without any contribution from the Plaintiff-mother ... the Defendant-father shall pay to the Plaintiff-mother the sum of Three Hundred Dollars ($300.00) per month for the support of said children."

Defendant William Grant filed a timely Motion to Alter or Amend Judgment, pursuant to Rule 59(e) M.R.Civ.P., to have deleted the above quoted language respecting his liability, as father, for child support and to have the justice order the plaintiff, as mother, to maintain medical insurance for the children. This motion was granted, the judgment was amended accordingly, and defendant thereafter took the present appeal from the amended judgment.

### 1.

Defendant's point is correct that the original formulation of the order for support erroneously conceived the law of Maine when it said that the

"father is liable for the full support of the minor children, without any contribution from the ... mother."

See 19 M.R.S.A. § 752 (1979–80). *Wood v. Wood*, Me., 407 A.2d 282 (1979). However, this erroneous statement was omitted in the amended judgment and, as requested by defendant, the amended judgment did re-

quire the mother of the children to contribute to their support in the form of maintaining medical insurance for each child.

■ It is the judgment as amended that is the final judgment from which defendant's appeal is taken. Moreover, since the amended judgment embodied exactly the contribution by his wife to child support that defendant sought in his motion to amend, defendant will not now be heard to complain, for the first time on appeal, that the amended judgment should have required her to make a larger contribution.

We therefore affirm the child support provisions of the Superior Court's judgment.

### 2.

■ On the controlling authority of *Fournier v. Fournier*, Me., 376 A.2d 100 (1977) and *Bryant v. Bryant*, Me., 411 A.2d 391 (1980), we reject defendant's claim on appeal that absent, as here, a written request by the parties for the disposition of property (marital or non-marital) acquired by either or both of them prior to January 1, 1972, the Superior Court lacked authority to divide such property.

### 3.

As to defendant's only remaining point on appeal on which the Court is evenly divided, I write for Chief Justice McKusick and myself. Our opinion is that the Superior Court erred in deciding that the "Coyle house" was marital property under the provisions of Section 722–A.

While Rhoda and William Grant were husband and wife (and before any legal decree of separation, none being involved here) the "Coyle house" was devised to them as joint tenants. We conclude that the fact alone that the Grants acquired the Coyle house by a devise from a third person excludes it as marital property, notwithstanding the other circumstances that the acquisition occurred during marriage and was an acquisition in joint tenancy.

The provisions of Section 722–A(3) delineate the circumstances giving rise to a "pre-

sumption" of marital property as well as those that overcome such presumption. As to the overcoming of the presumption, subsection 3 is not self-contained but interrelates with the provisions of Section 722–A(2). This appears from the language in subsection 3:

"The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection 2."

Because of this linkage of subsections 2 and 3 we interpret them to express a conception that is fundamentally unitary but has two subsidiary facets: (1) property "acquired . . . subsequent to the marriage" is presumptively marital property, and (2) property thus acquired moves beyond being only presumptively marital and becomes established as conclusively defined marital property if the presumption is not overcome by any of five specifically enumerated factors. One of these five factors is that the "[p]roperty [was] acquired by gift, bequest, devise or descent."

We proceed, then, in accordance with this foundational conception to apply Section 722–A to the circumstances of this case.

Because of the undisputed fact that the property at issue was "acquired . . . subsequent to the marriage", we inquire, first, whether such time of acquisition was sufficient to make the property presumptively marital property under subsection 3. As to this, we note the additional language appearing in subsection 3, that the property must have been acquired by "either" spouse. This raises the question whether an acquisition in "joint tenancy", beyond being an acquisition by both spouses, is also an acquisition by "either" spouse. More sharply focused, this issue is whether "either" spouse connotes that one, or the other, spouse must acquire the property in a sole, or individual, form of ownership.

We conclude that the answer to this question is provided by the other language in subsection 3:

"regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property."

We take this language to signify that property is acquired by "either" spouse, within the contemplation of subsection 3, whether or not title is held "individually" and even if it is held by the spouses in "joint tenancy", as one "form of co-ownership."

We conclude, therefore, that under Section 722–A(3) the Coyle house was "property acquired by either spouse subsequent to the marriage", and for that reason it became, presumptively, marital property.

The next inquiry is whether, as provided in subsection 3, the presumption is "overcome by a showing" that the said property, presumptively marital, was acquired "by a method listed in subsection 2."

For this purpose, we turn to the provision in subsection 2 that:

" 'marital property' means all property acquired by either spouse subsequent to the marriage except: A. Property acquired by gift, bequest, devise or descent."

Since the undertaking in which we are engaged is to bring to bear the functional interrelationship by which this provision in subsection 2 overcomes the presumption arising by virtue of subsection 3, we discern no sound reason to conclude that the words "either spouse" in subsection 2 are calculated to have a meaning different from that plainly delineated as their meaning in subsection 3. Hence, for the purposes of subsection 2, as interrelated with subsection 3, we decide that property is acquired by "either spouse" even when there is an acquisition in a "form of co-ownership such as joint tenancy." [2]

2.  We disagree, therefore, with the approach of the Missouri Court of Appeals (Kansas City District) in *Forsythe v. Forsythe*, Mo.App., 558 S.W.2d 675 (1977). We interpret *Forsythe v. Forsythe* to have taken a position we deem

untenable, that "either spouse" includes an acquisition by "both" spouses in joint tenancy for the purpose of determining whether a presumption of marital property has arisen, but that they have the different meaning, of excluding

Under Section 722–A(3), then, the Coyle house, because it was acquired by "either spouse" subsequent to marriage and prior to a decree of legal separation, was presumptively marital property. The presumption, however, was overcome by the provisions of Section 722–A(3) as interrelating with those of Section 722–A(2). The presumption was overcome by the fact that the "method" of acquisition was one of those "listed" in Section 722–A(2), namely, that the "[p]roperty [was] acquired by gift, bequest, devise or descent." [3]

The case at bar must be distinguished from the recently decided case of *Carter v. Carter*, Me., 419 A.2d 1018 (1980). In *Carter*, the principle of "transmutation" became applicable because that case dealt with a claimed gift by one spouse to the other. Transmutation cannot be applicable in a case where, as in the instant case, the acquisition of property during marriage is by "gift, bequest, devise or descent" from a third person other than the spouses.

Here, then, the plain meaning of the statute remains controlling, *cf. Grishman v. Grishman*, Me., 407 A.2d 9, 12 (1979), and the "Coyle house", acquired by a method listed in subsection 2 of 19 M.R.S.A. § 722–A, must be excluded from the category of "marital" property.

The entry shall be:

such a joint tenancy acquisition, where they come into play in relation to the functionally interrelated purpose of determining whether the presumption, having come into existence, is overcome.

In this regard, too, we derive little assistance from the analysis of the District of Columbia Court of Appeals in the cases of *Turpin v. Turpin*, 403 A.2d 1144 (1979) and *Hemily v. Hemily*, 403 A.2d 1139 (1979), because the language of the Maine statute differs markedly in crucial respects from the District of Columbia Marriage and Divorce Act of 1977.

3. We thus take the plain language of Section 722–A(2) and (3) to manifest legislative intendment that a title status produced through the instrumentality of a third party by way of "gift, bequest, devise or descent" shall remain unaffected by the subsequent termination of a marriage relationship that happened to exist at the time the title status was created.

1. 19 M.R.S.A. § 722–A(2) and (3) provide:

The judgment of the Superior Court is affirmed.

McKUSICK, C. J., concurring.

GLASSMAN, J., with whom NICHOLS, J., joins, concurring in separate opinion.

GLASSMAN, Justice, with whom NICHOLS, Justice, joins, concurring.

Because of my disagreement with part 3 of the Court's opinion, I write separately on behalf of Justice Nichols and myself.

The statutory definition of marital property is found in 19 M.R.S.A. § 722–A(2). This definition is not without ambiguity. The Missouri Court of Appeals (Kansas City District) announced an interpretation of an identically worded statute completely inconsistent with that adopted by the opinion of this Court. *See Forsythe v. Forsythe*, 558 S.W.2d 675 (Mo.App.1977). Neither the interpretation of the Missouri court nor the interpretation of this Court is logically compelled by either the language or the structure of subsection 2. Although it is true, as noted by the opinion of the Court, that subsections 2 and 3 of Section 722–A are functionally interrelated, that conclusion does not aid in determining the meaning of the language in either subsection. Subsection 3 is itself unclear.[1] For these reasons,

2. Definition. For purposes of this section only, "marital property" means all property acquired by either spouse subsequent to the marriage except:
A. Property acquired by gift, bequest, devise or descent;
B. Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise or descent;
C. Property acquired by a spouse after a decree of legal separation;
D. Property excluded by valid agreement of the parties; and
E. The increase in value of property acquired prior to the marriage.
3. Acquired subsequent to marriage. All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, and

I conclude that it is fruitless to endeavor to determine the meaning of subsections 2 and 3 as well as their interrelationship by a mere textual analysis.

The fundamental guide to the determination of the meaning of a statute is the intention and purpose of the Legislature in adopting such a statute. *See, e. g., King Resources Co. v. Environmental Improvement Commission,* Me., 270 A.2d 863, 869 (1970). *See generally* Comment, *Statutory Construction,* 30 Me.L.Rev. 72 (1978). We have previously noted that our marital property statute is based upon "the fundamental conception of marriage, having its roots in community property law, as a partnership or shared enterprise." *Carter v. Carter,* Me., 419 A.2d 1018, 1022 (1980); *Tibbetts v. Tibbetts,* Me., 406 A.2d 70, 76 (1979). In order to effectuate this partnership conception of marriage, subsection 3 creates a statutory rebuttable presumption that property acquired during marriage is marital property without regard to the manner in which title is held. Drawing upon underlying community property concepts upon which our marital property statute is based and in recognition of the principle that each spouse should be able to maintain a separate estate consisting of 1) property brought into the marriage, 2) the increase in value of such property, 3) property excluded by agreement of the parties from the marital estate, 4) property acquired by a spouse by gift, bequest, devise or descent, 5) property acquired in exchange for non-marital property and 6) property acquired by a spouse after the partnership has been terminated by a decree of legal separation, subsection 2 excludes from the definition of marital property and therefore from the operative effect of the statutory rebuttable presumption the kinds of property enumerated above. The underlying purpose of our marital property statute is not furthered by excluding from the operation of the statutory presumption property received by both spouses during marriage by gift, bequest, devise or descent. On the contrary, the partnership concept of marriage is enhanced by a recognition that property acquired jointly by the spouses during marriage by gift, bequest, devise or descent is a part of the marital estate. Of course, this statutory rebuttable presumption may be overcome by evidence demonstrating that the transferor to the spouses had a contrary intention.

The interpretation of the statute here urged is totally consistent with the community property law on which our marital property statute is based. Describing the community estate, Professor de Funiak stated:

> It includes the property earned or gained by onerous title by either during the union, as well as that given to *both* during the marital union. . . . Likewise, property given to *one spouse alone,* during marriage, is the separate property of that spouse. 1 W. de Funiak, *Principles of Community Property* § 1 (1943) (emphasis added) (footnote omitted).

The source of these principles was elucidated by Professor de Funiak:

> The statute laws of Spain, from the time of the promulgation of the Fuero Juzgo in 693, have explicitly made provision as to property acquired by the spouses during marriage by gift, inheritance, devise or bequest and have been most careful in protecting each spouse in his or her right to have such acquisition as separate property *when it was given to such spouse alone.* This was fully recognized and thoroughly discussed by the Spanish jurisconsults. *Property so acquired was not*

community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection 2.

The last sentence of subsection 3 unquestionably refers to the five subdivisions of subsection 2. Three of the subdivisions of subsection 2 do not describe "a method" of acquiring property. The first sentence of subsection 3 excludes from the operation of the presumption property acquired subsequent to a decree of legal separation. This exclusion is unnecessary in light of the last sentence of subsection 3 which incorporates the exclusion of subsection 2(C). The point is that the lack of clarity in the drafting makes textual analysis a tenuous basis for discerning the meaning of the statute.

acquired by labor, skill or industry so as to have been acquired by onerous title and, consequently, shared between spouses. . . . Of course, *if the gift, inheritance, devise or bequest was made to both spouses, they both took it as community property; but if it was made to one alone it was the separate property of that spouse. Id.* at § 69 (emphasis added) (footnotes omitted).

Since there was no evidence introduced in the Superior Court to overcome the statutory presumption that the property devised to the parties jointly during marriage was marital property, I would affirm the judgment of the Superior Court.