## Sheena SMITH

v.

## David SMITH.

Supreme Judicial Court of Maine.

Argued May 2, 1983.

Decided March 6, 1984.

Lipman & Parks, P.A., Barbara L. Raimondi, David M. Lipman (orally), Augusta, for plaintiff.

Kelly, Remmel & Zimmerman, Graydon G. Stevens (orally), Portland, for defendant.

Before McKUSICK, C.J., and GODFREY *, NICHOLS, ROBERTS, CARTER **, and WATHEN, JJ.

ROBERTS, Justice.

Sheena Smith appeals from a judgment of the Superior Court, Lincoln County, which affirmed a judgment of the District Court, Wiscasset. Pursuant to a divorce judgment, the District Court divided Sheena and David Smith's property. On appeal, Sheena challenges only the disposition of the marital homestead in Whitefield, Maine, known as "Dunraven." We reverse that part of the judgment.

David Smith purchased Dunraven for $100,000 about three months prior to the parties' marriage and took title in his name only. Over a year later, David deeded an undivided one-half interest in Dunraven to Sheena so that the parties held the property

---

* Godfrey, J., sat at oral argument and participated in the initial conference but retired before this opinion was adopted.

** Carter, J., sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

as tenants-in-common. Sheena Smith filed a complaint for divorce approximately one year after the property transfer. Following extensive discovery and a hearing at which both parties testified, the District Court entered a judgment of divorce for irreconcilable differences and divided the couple's property. The District Court set aside David Smith's (remaining) one-half interest as *nonmarital* property and concluded that Sheena Smith's one-half interest constituted *marital* property subject to division pursuant to 19 M.R.S.A. § 722–A (1981). Consequently, the court divided equally Sheena's one-half interest in Dunraven between the parties and ordered Sheena to convey her share of the marital homestead to David upon his payment of $18,000.

The sole issue raised on appeal is whether the District Court erred in finding that the one-half interest in Dunraven deeded to Sheena Smith as a tenant-in-common was marital property subject to division pursuant to 19 M.R.S.A. § 722–A. Sheena argues that because her one-half interest in Dunraven was a *personal* gift to her, individually, the real estate is nonmarital property and thereby not subject to division by the District Court. David contends that the transfer to Sheena was a gift to the marital estate. Hence, he argues that Sheena's one-half share is marital property subject to division.

I

Sheena Smith and David Smith met in Scotland in June of 1977. David was then involved in a divorce proceeding in the United States. Sheena was a widow with two teenage children. She owned both real and personal property. Initially, she supported David at her home in Argyll, Scotland.

Evidently, by early 1978, the parties began to think and plan seriously about their marriage. In March of 1978, after his divorce was settled, David purchased a house at Whitefield, Maine, known as Dunraven for $100,000 plus about $8,000 for furnishings. The purchase price was financed by a $30,000 bank mortgage and a $30,000 loan from David's mother, Helen Smith. The balance came from David's own assets. David took title to the property in his name alone.

Sheena testified that Dunraven was purchased as the marital home and that David led her to believe that the house could not be placed in both their names until after they were married. Moreover, she claimed that the parties had an "arrangement" whereby, instead of David's repaying her for the funds she expended prior to the marriage, those funds would constitute her contribution toward the purchase of the house. David never denied such an arrangement.

During the marriage, Sheena sold her Argyll home for $21,000 and used $17,000 of the proceeds to purchase a camp near Eustis, Maine. She took title in joint tenancy, but the District Court concluded that "clear and convincing evidence exists that she intended not to make this marital property." Sheena used the remaining $4,000, along with her other savings, to make $8,000 worth of improvements at Dunraven. These include a swimming pool which Sheena intended as a "gift" to David and the children.

During the marriage, problems arose between the parties. Sheena objected to David's use of drugs and alcohol. She claims he became violent and once beat her. David also began a correspondence course at Goddard College in Vermont, which required him to spend one week every four to six weeks on campus. About this same time David began seeing another woman.

As a result of their marital difficulties Sheena suffered emotional problems, even suicidal tendencies, and became increasingly insecure about her financial circumstances, especially regarding the title to Dunraven. The parties sought professional marriage counseling and Sheena saw a psychiatrist. The psychiatrist suggested a property transfer to allay Sheena's concerns.

Shortly thereafter, in 1979, over a year after the wedding, David "reluctantly"[1] deeded an undivided one-half interest in Dunraven to Sheena. The District Court found that:

> This was in the nature of a gift and this undivided one-half interest is marital property, the remaining undivided one-half non-marital. It is clear from the evidence that this gift of a one-half interest was intended for the specific purpose of calming Sheena's fear as to her physical and mental condition and not to create marital property of the entire title.

On the basis of that finding, the court awarded Sheena $18,000 for her share of Dunraven, representing one-quarter of the value of the equity. On appeal, Sheena does not oppose granting ownership of Dunraven to David and she does not object to the District Court evaluation. She claims only that she should have been given $36,000 instead of $18,000.

## II

◼ Disposition of marital property pursuant to a divorce is committed to the sound discretion of the divorce court, *e.g., Crooker v. Crooker,* 432 A.2d 1293, 1297 (Me.1981), and reviewable only for abuse of that discretion. *Quimby v. Quimby,* 450 A.2d 486, 487 (Me.1982). To prevail on appeal, therefore, the plaintiff must show that the District Court either erred in deciding what is marital property or abused its discretion in dividing that property. We hold that the District Court erred in determining that Sheena Smith's one-half interest in Dunraven constituted marital property subject to division, and we direct that she be awarded $36,000 for her nonmarital one-half interest.

Section 722–A creates a statutory, rebuttable presumption that property acquired by either spouse subsequent to marriage,[2] regardless of the form of title, is marital property subject to division by the divorce court. *E.g.,* 19 M.R.S.A. § 722–A(3) (1981); *Young v. Young,* 329 A.2d 386, 389 (Me. 1974). Both the statute, 19 M.R.S.A. § 722–A(2) (1981),[3] and case law, *see e.g., Grant v. Grant,* 424 A.2d 139 (Me.1981); *Tibbetts v. Tibbetts,* 406 A.2d 70 (Me.1979), delineate several means to overcome the presumption.

◼ First, property acquired after or during the marriage *in exchange* for property acquired prior to the marriage is deemed nonmarital. 19 M.R.S.A. § 722–A(2)(B);[4] *see also Tibbetts,* 406 A.2d at

---

1. He testified to his "deep misgivings" because after the transfer plaintiff could "turn around and sue … for divorce."

2. We have declined to expand the definition of marital property to encompass property acquired while the parties lived together prior to marriage. *Grishman v. Grishman,* 407 A.2d 9 (Me.1979). In *Grishman,* the plaintiff-husband had received a one-half interest in property pursuant to a prior divorce. After the parties began living together, the plaintiff used funds from the couple's joint checking account to acquire title in the remaining half-interest. The divorce court characterized this remaining half-interest as "marital property" and computed its value in the parties' total equity in real estate for purposes of disposition of their property. Although we held that the half-interest was not "marital property," in a footnote we suggested that on remand the presiding justice could determine upon the evidence whether or not the one-half interest was impressed with a resulting trust for the benefit of the wife. *Grishman,* 407 A.2d at 12 n. 7.

3. Section 722–A(2) reads as follows:

   2. Definition. For purposes of this section only, "marital property" means all property acquired by either spouse subsequent to the marriage, except:

   A. Property acquired by gift, bequest, devise or descent;

   B. Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise or descent;

   C. Property acquired by a spouse after a decree of legal separation;

   D. Property excluded by valid agreement of the parties; and

   E. The increase in value of property acquired prior to the marriage.

4. The parties do not focus upon, nor do we consider subsection (2)(B). We also do not consider subsection (2)(D) which exempts from marital property "[p]roperty excluded by valid agreement of the parties." We intimate no opinion whether either of these subsections are applicable to the facts of this case.

74–75; *Young,* 329 A.2d at 389–91. Such property is nonmarital, however, only *"to the extent* that it was acquired in exchange for property acquired prior to marriage." *Tibbetts,* 406 A.2d at 75 (emphasis in original). Because "a single item of property may be to some extent non-marital and the remainder marital . . . the portion attributable to each must be determined." *Id.* To apportion the property of the parties in such circumstances, the *Tibbetts* court chose the "tracing" or "source-of-funds" theory rather than the "title" rule, as the more flexible and equitable approach. *Id.* at 76–77; *see also Stevens v. Stevens,* 448 A.2d 1366, 1371 (Me.1982).

■ Property acquired by gift, bequest, devise, or descent is a second and more complex exception to the presumption of marital property. *See* 19 M.R.S.A. § 722–A(2)(A); *see also Grant,* 424 A.2d 139 (third party gift to spouses as joint tenants); *Carter v. Carter,* 419 A.2d 1018 (Me.1980) (transfer from one spouse to both spouses jointly). The focus of this appeal is whether the transfer to Sheena constitutes a "gift" that falls outside the marital property presumption pursuant to § 722–A(2)(A).

In *Carter,* the husband acquired land, entirely with his own funds, several years prior to his marriage. Construction of the house began in the year prior to the marriage. By deed, dated less than a year after the marriage, the husband converted his interest in the house to a joint tenancy with his wife. The couple resided on the property during the entire term of the marriage. The divorce court found the parties' respective "one-half interests" to be *nonmarital* and consequently set aside one-half to each party. On appeal, the husband argued that the entire property remained his separate nonmarital property because the transfer into joint tenancy was evidence of an intent to avoid probate and inheritance taxes, rather than evidence of an intent to make a gift. The wife argued that the common-law presumption of a gift (*see Greenberg v. Greenberg,* 141 Me. 320, 43 A.2d 841 (1945)), read in conjunction with § 722–A(2)(A),

made the transfer a gift, subsequent to marriage, resulting in separate nonmarital property.

We concluded that, in the absence of clear and convincing evidence to the contrary, a "transfer from one spouse to both spouses jointly evidenced an intent to make a gift to the *marital estate." Carter,* 419 A.2d at 1022–23 (emphasis added). In reaching this conclusion, we stated: "The exception from the definition of marital property for property acquired by gift, Section 722–A(2)(A), has no application to a transfer during marriage from one spouse to both spouses jointly." *Id.* at 1022. Our conclusion was based on a recognition of both the "partnership nature" of marriage and the desire to achieve an equitable division of the property pursuant to § 722–A(1). *Id.* at 1022–23.

In *Grant v. Grant,* 424 A.2d 139, 141 (Me.1981), the divorce court classified all of the couple's substantial property as "marital" and distributed it equally between them. We affirmed the judgment, although the four sitting justices divided evenly over the classification of one of the two family homes. Justice Wernick (with whom Chief Justice McKusick concurred) concluded that "the fact alone that the Grants acquired the . . . house by a devise from a third person *excludes* it as marital property, notwithstanding the other circumstances that the acquisition occurred during marriage and was an acquisition in joint tenancy." *Id.* (emphasis added). Justice Wernick distinguished *Carter* as an interspousal gift, for which the principle of "transmutation" became applicable. *Id.* at 143; *see also Young,* 329 A.2d at 389–91 (transmutation occurs when spouse intends to convert property from nonmarital to marital). "Transmutation" could not apply to a third-party gift, hence the "plain meaning" of the statute remained controlling. *Carter,* 424 A.2d at 143.

In a concurring opinion Justice Glassman (joined by Justice Nichols) maintained that "property devised to the parties jointly during marriage was marital property. . . ."

*Id.* at 145 (H. Glassman, J., concurring). In an analysis which reflects his *Carter* opinion, Justice Glassman stated that the legislative purpose of the statute (i.e., the recognition of the partnership concept of marriage) is not furthered by excluding from marital property gifts acquired jointly, unless the transferor had a contrary intention. *Id.* at 144.

In the case before us, the District Court employed what amounts to a two-step approach to determine the status and division of Dunraven. The court first analyzed the evidence to determine whether the transfer to Sheena effected a gift of all of Dunraven to the marital estate. In a second step, the court determined, without explanation, the status of Sheena's one-half interest to be marital property.

With respect to step one, the District Court recognized and applied the *Carter* analysis. The court was satisfied by clear and convincing evidence that the interspousal transfer in question was not intended to "transmute" nonmarital to marital property. David Smith did not transfer his nonmarital property to the marital estate. Thus, the court concluded that the whole of Dunraven was not transferred to the marital estate and that David retained one-half as individual property.

■ With respect to step two, the District Court concluded, without any analysis, that the one-half interest conveyed to Sheena Smith became marital property. Assuming without deciding that *Carter* would permit such a result, our review of the record reveals no evidence to support a conclusion that the conveyance was intended to transfer a one-half interest in Dunraven to the marital estate. Sheena's interest was ac-quired by gift, thus removing the statutory presumption. Our holding in *Carter* does not require that every inter-spousal transfer be excluded from the *gift* exception to the statutory presumption.[5] Given the District Court conclusion that David did not intend the transmutation of Dunraven and that the conveyance to Sheena was a gift, neither the *Carter* principle nor the statutory presumption apply. Rather, the state of the title must control. We hold, therefore, that the interest conveyed is Sheena's individual property.[6]

Consequently, we reverse the District Court's disposition of Sheena's interest in Dunraven. We determine that, at the time of their divorce, Sheena and David Smith each held an undivided one-half interest in Dunraven as individual nonmarital property.

The entry is:

Judgment reversed.

Remanded to the District Court with direction to increase the award to Sheena Smith for her interest in Dunraven to $36,000.

All concurring.

---

5. We need not decide whether *Carter* applies only to an interspousal transfer creating a joint tenancy.

6. We note that, in support of his position, David relies heavily on *McLain v. McLain,* 409 So.2d 852 (Ala.Civ.App.1981). In *McLain,* the husband deeded the *entire* house to his wife to effect a reconciliation in the marriage. Evidence showed that the parties contributed equally to the purchase of the house. Although the wife argued that the entire house was her separate property, the divorce court declared it marital property and divided it equally between the parties. The appeals court affirmed. Contrary to David's contention, *McLain* is unlike the case at bar. There is no mention of an Alabama statute similar to Maine's and the transfer of the *entire* title appears key to the holding.