**William ZILLERT**

v.

**Lydia ZILLERT.**

Supreme Judicial Court of Maine.

Dec. 29, 1978.

Cloutier & Joyce by Edward S. David (orally), Livermore Falls, for plaintiff.

Preti, Flaherty & Beliveau by Michael Gentile (orally), Rumford, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and NICHOLS, JJ.

NICHOLS, Justice.

This cause concerns the application of 19 M.R.S.A. § 722–A to the judicial disposition of property owned by the parties to a divorce. The Plaintiff, William Zillert, appeals from that part of the judgment of the Superior Court in Oxford County, which ruled that certain real estate held in joint tenancy by the parties was not "marital property" within § 722–A, and which "set apart" the parties' interests in that property by having it remain in joint tenancy.[1]

We sustain the appeal.

The Plaintiff, William Zillert, and the Defendant, Lydia Zillert, were married in New Jersey in 1959. In 1960, they moved to Maine where they took title by joint tenancy to a farm in the town of Hartford. The purchase price for the farm was $4,600.00, of which $4,000.00 came from a savings account. The record is unclear as to the ownership of the savings account, and is totally silent as to the source from which came the remaining $600.00 of the purchase price.

In 1965, Mrs. Zillert departed the marital home, and eventually returned to her native Germany. The evidence in the record tends to show that she had refused to work on the farm, because of her intense dislike of farm life and also of Maine winters. Mr. Zillert testified that she referred to the farm as "junk."

When Mrs. Zillert left, she withdrew and took with her $4,000.00 from their savings account. Again, the record is unclear as to the source of this money.

In 1976, the Plaintiff commenced this action in Maine District Court, District Eleven (Rumford), seeking a divorce upon the alternative grounds of cruel and abusive treatment and utter desertion. His complaint averred that there was marital property for disposition in accordance with 19 M.R.S.A. § 722–A. The Defendant's answer, which denied the allegations of the existence of grounds for divorce, did not respond to the allegation of marital property.

After a hearing, the District Court granted the Plaintiff a divorce upon the ground of desertion. See 19 M.R.S.A. § 691. The District Court either impliedly found, or assumed, in the absence of any suggestion to the contrary, that the farm was marital property. It divided the property by awarding the Plaintiff his own undivided one-half interest, plus one-third of the Defendant's interest. The effect of this award was to give Mr. Zillert a two-thirds interest in the farm, and Mrs. Zillert a one-third interest therein.

Dissatisfied with this disposition of the property, the Plaintiff appealed to Superior Court from that part of the judgment.

In Superior Court the presiding justice concluded, apparently *sua sponte,* that the farm was *not* marital property. He ruled that the separate shares of each party was to be "set off" by remaining in joint tenancy. He therefore remanded to District Court for entry of a specific judgment reflecting those rulings. The Plaintiff then appealed to this Court.[2]

---

1. The Plaintiff also appealed from that part of the judgment which made a disposition of the household furnishings. Subsequently, that part of the appeal was withdrawn, and the judgment of the Superior Court on that issue is not subject to further review.

2. There are circumstances when an order remanding a case from Superior Court to District Court will be interlocutory and therefore not subject to review as a final judgment in this Court. *See* 2 Field, McKusick and Wroth, Maine Civil Practice, § 173.2 (1977 Supp.). In

We hold that the court below erred in its disposition of the farm property.[3]

Judicial disposition of property upon divorce is governed by 19 M.R.S.A. § 722–A which, at the time in question, provided in pertinent part as follows:

1. Disposition. In a proceeding: (a) for a divorce, . . . the court shall set apart to each spouse his property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors including:

A. The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

B. The value of the property set apart to each spouse; and

C. The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children.

2. Definition. For purposes of this section only, "marital property" means all property acquired by either spouse subsequent to the marriage except:

A. Property acquired by gift, bequest, devise or descent;

B. Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise or descent;

C. Property acquired by a spouse after a decree of legal separation;

D. Property excluded by valid agreement of the parties; and

E. The increase in value of property acquired prior to the marriage.

3. Acquired subsequent to marriage. All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection 2.

■ This statute is based on section 307 of the 1970 version of the Uniform Marriage and Divorce Act, 9 Uniform Laws Annotated at 490–492 (Master Ed. 1973).[4]

this case, however, the remand order was for entry of a specific judgment, as to which the District Court had no discretion. We conclude this remand order is a final judgment for purposes of our review.

3. In addition to the substantive error discussed in the text, the court arguably erred procedurally as well, by enlarging the Defendant's rights on the Plaintiff's appeal. See Littlefield v. Littlefield, Me., 292 A.2d 204 (1972). Notwithstanding the criticism of Littlefield in the comment, "Cross Appeals in Maine: Pitfalls for the Winning Litigant," 25 Me.L.Rev. 105 (1973), Field, McKusick, and Wroth note that the requirement of a cross-appeal from District Court to Superior Court "may well be sound." 2 Maine Civil Practice § 73.10 (1977 Supp.)

However, in view of the Plaintiff's failure to raise the issue, and in view of our decision on the merits, we need not decide whether this circumstance alone would have been dispositive in the Plaintiff's favor.

4. SECTION 307. [Disposition of Property.]
(a) In a proceeding for dissolution of the marriage . . . the court shall set apart to each spouse his property and shall divide the

marital property without regard to marital misconduct, in such proportions as the court deems just after considering all relevant factors including:
(1) the contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;
(2) the value of the property set apart to each spouse; and
(3) the economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children.
(b) For purposes of this Act only, "marital property" means all property acquired by either spouse subsequent to the marriage except:
(1) property acquired by gift, bequest, devise, or descent;
(2) property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;
(3) property acquired by a spouse after a decree of legal separation;
(4) property excluded by valid agreement of the parties; and

The 1970 Uniform Act was an attempt to revise the entire conceptual structure of divorce based on fault, and this approach was extended to the Act's treatment of property division. Prefatory Note to Uniform Marriage and Divorce Act, 1970 Handbook of the National Conference of Commissioners on Uniform State Laws at 176–178.

Apparently, the fact that misconduct could not be considered in the division of property influenced the A.B.A. House of Delegates to disapprove the Uniform Act in 1972. *See Conrad v. Bowers,* 533 S.W.2d 614, 620 (Mo.App.1975). A new version of the Act was subsequently promulgated by the Commissioners in 1973.

In 1971, the Legislature enacted, in § 722–A, a modified version of that section. P.L. 1971, c. 399, § 2, eff. Jan. 1, 1972. The significant difference between § 722–A and the Uniform Act is that the Legislature deleted the language "without regard to marital misconduct" with reference to the division of marital property.

The mechanics of setting apart non-marital property and dividing marital property remained intact. They are explained in the Commissioners' Note to § 307, 9 Uniform Laws Annotated at 492:

.   .   .   (T)he court is directed first to set apart to each spouse all of his or her property that is not defined as marital property by subsection (b), and secondly to divide the marital property between the parties in accord with the standards established by the section. The court may divide the property equally or unequally between the parties   .   .   ..

Subsection (b) defines marital property only for the purposes of division on dissolution of marriage   .   .   .   No attempt is made to regulate the respective interests of the spouses in property during the existence of the marriage.

Subsection (c) creates a presumption that all property acquired after marriage and prior to a decree of legal separation is marital property. In the absence of contrary evidence this presumption will be controlling, regardless of the manner in which title is held by the spouse. A spouse seeking to overcome the presumption has the burden of proof on the issue of identification.   .   .   .

■ Application of those principles to the case at bar is relatively straightforward. The real estate in question was purchased by the parties in 1960, after their 1959 marriage. This fact gives rise to the presumption that the farm was marital property. Since there is no evidence in the record to support a finding that the farm fell within any of the exceptions of subsection 2, the presumption that the farm is marital property must be given full effect. *See* M.R.Evid. 301(a).

In *Young v. Young,* Me., 329 A.2d 386 (1974), upon which the Superior Court relied, the parties were able to trace on the record the source of funds used to purchase the property in question. That circumstance distinguishes *Young* from the case at bar. We conclude that the Zillerts' farm was marital property, and, indeed, neither party has challenged that conclusion on appeal.

We move on to the next question, which is the one upon which the parties focused their attention upon appeal: Were the two-thirds/one-third proportions found by the District Court a just division of this property?

If we were to remand this cause to the Superior Court for consideration of that question, a new justice would have to review the record of the evidence before the District Court because death has taken from us the justice who presided when this

---

(5) the increase in value of property acquired prior to the marriage.

(c) All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (b).

cause was last before the Superior Court. As a matter of judicial economy, we have reviewed the record made in District Court, and we conclude that the decision of the District Court to divide the Zillert farm in those proportions was not an abuse of its discretion. *Fournier v. Fournier,* Me., 376 A.2d 100, 103 (1977).

■ We are thus brought to a question novel in Maine. When our legislature enacted Section 722–A, which follows the language of Section 307 of the Uniform Act and directs that the court "shall divide" the marital property, did it thereby confer upon the District Court (as well as upon the Superior Court when a proceeding for divorce is there commenced) the power to accomplish this division, in its discretion, by sale or partition of the real estate?

In certain other states which, since promulgation of the Uniform Act, have adopted substantially similar statutes relating to marital property, we find precedent for so construing this statutory language, "shall divide," as to authorize the court hearing the divorce to complete the task with respect to the real estate.

In Colorado, where the pertinent statute also uses the word "divide" in language identical to our § 722–A, the appeals court has noted that in a case where the trial court found the marital property could not be physically divided in a manner affording each party an equal share, and that partition would substantially diminish the value of each subparcel, the trial court properly ordered the land sold at public sale and the proceeds less costs divided between the parties. *Jekot v. Jekot,* 32 Colo.App. 118, 507 P.2d 473 (1973).

More recently the Colorado Court of Appeals has followed the *Jekot* holding in *In re Marriage of Weaver,* Colo.App., 571 P.2d 307 (1977). Noting another trial court's finding that "the evidence relating to market value of the properties does not establish such market value with sufficient certainty to enable the Court to equitably divide the property," the Colorado Supreme Court held the trial court "had the power to order the sale of all of the property or to

make the parties tenants in common, which would then give either party the right to seek formal partition of any or all of the property. [citations omitted] Since the court determined the percentage ownership each party had in the marital property, and also determined that it could not make an equitable physical division, we find no abuse of discretion in ordering the sale of all the property and division of the proceeds." *Id.* at 308–309.

Washington is another state which for a number of years has had a similar statute, although the operative word is "disposition" rather than "divide." In *Shaffer v. Shaffer,* 43 Wash.2d 629, 262 P.2d 763 (1953), the Washington court, noting that the language above-quoted had been in the divorce statutes in the State of Washington for many years, referring to a statute of 1891, said that the statute "establishes the *duty* of the trial court to dispose of all of the property of the parties which is brought to its attention in the trial of a divorce case." The wife challenged the award in a divorce case of an apartment house and its furnishings to the divorced husband and wife as "joint owners or tenants in common." The Washington court held that such disposition was error, declaring, "This was not a performance of the court's statutory duty." The court made the following observation which is equally pertinent to the case now before us:

"The wisdom of the legislative requirement is well illustrated by this case. Because of the inadequacies in the decree, future litigation, including a partition action, between the parties may be necessary. They should not be left with this prospect. They have a right to have their respective interests in their property after they are divorced, definitely and finally determined in the decree which divorces them." *Shaffer v. Shaffer, supra,* at 764.

New Jersey is yet another state which has a statute substantially similar to our own although the product of original draftsmanship in that legislature. N.J.S.A. 2A:34–23 (1971) reads in pertinent part:

"In all actions where a [divorce judgment is entered] the court may make such award or awards to the parties, in addition to alimony and maintenance, to effectuate an equitable distribution of the property, both real and personal, which was legally and beneficially acquired by them or either of them during the marriage."

Last year the Appellate Division of the New Jersey Superior Court observed that in a case where neither an immediate sale of the marital residence, nor its retention in joint title was advisable, the trial court could employ a mortgage technique to achieve an equitable distribution of this important asset. *Gemignani v. Gemignani,* 146 N.J.Super. 278, 369 A.2d 942 (1977).

In Vermont, where the pertinent statute authorizes the trial court to decree such disposition of the property of the parties "as shall appear just and equitable, having regard to the respective merits of the parties," 15 V.S.A. § 751, the wide range of discretion thus given the court has been repeatedly recognized. *LaFarr v. LaFarr,* 132 Vt. 191, 193, 315 A.2d 235 (1974); *Condosta v. Condosta,* Vt., 395 A.2d 345 (1978).

We reach the conclusion that our statute should be construed to give equally broad power to the court hearing the divorce proceedings to complete the task insofar as dividing the marital property is concerned.

We note that such a result is consistent with the apparent purpose of those who originally sponsored the enactment of this statute in the Legislature of 1971. L.D. 1084, the precursor of the enacted bill (L.D. 1769), carried this statement of fact:

It is the intent of this act to empower the court to divide real and personal property in a final decree of divorce under certain conditions as equity and justice require.

Likewise when the 1972 amendment was being considered in the House of Representatives, Rep. Richard D. Hewes explained, "[The amendment] makes mandatory that a judge will have to determine how property of a divorced couple will be apportioned." 3 Legislative Record, 1971 (1972 Special Session) 999.

■ The task of the trial court is to view the parties real and personal property as a whole and to make a just and equitable distribution. *See Azzi v. Azzi,* N.H., 392 A.2d 148, 150 (1978). While we hold that the court granting the divorce may, in its discretion, complete the division of the marital property by proceedings in the nature of partition, we do not suggest that the court must do so in every case. Liquidation of the marital assets in every contested case would often be disadvantageous to the parties. *See Sweeney v. Sweeney,* Vt., 388 A.2d 388, 389 (1978). Indeed, justice may more often be served by leaving the divorced parties as co-owners of real estate, either party free to initiate proceedings for partition when the party wishes.[5]

■ In the circumstances of the case before us, however, we find it was an abuse of discretion by the District Court not to so finish the job. This farm was the major item of marital property. Its importance to the husband is obvious. It would be difficult and expensive for him to get service upon the wife if it were necessary for him to initiate separate action to accomplish partition of their farm.

After considering all relevant factors, we deem it just for the District Court by appropriate order to:

(1) Cause the present value of the subject real estate to be fixed by one or more competent independent appraisers;

(2) Give the Plaintiff husband an option to purchase the one-third interest of the Defendant wife for one-third of the value so established within ninety days after this appraisal is accepted by the District Court; and

(3) If the Plaintiff husband should not exercise this option, pursue a proceeding for partition of the subject real estate in the

---

5. *See generally* J. Krauskopf, Marital Property at Marriage Dissolution, 43 Missouri L.Rev. 157–198 (1978); J. Castleberry, Constitutional Limitations on the Division of Property Upon Divorce, 10 St. Mary's L.J. 37–73 (1978).

manner such proceedings are conducted in Superior Court under the provisions of Chapter 719, of Title 14, M.R.S.A.

The entry will be:

Appeal sustained.

Judgment set aside.

Remanded to the Superior Court to be remanded, in turn, to the District Court for further proceedings consistent with the opinion herein.

GODFREY, J., did not sit.