**David F. STEVENS**

v.

**Nancy A. STEVENS.**

Supreme Judicial Court of Maine.

Argued March 8, 1982.

Decided Aug. 13, 1982.

Sandy & Sandy, Robert E. Sandy, Jr. (orally), Waterville, for plaintiff.

Law Offices of Burton G. Shiro, Charles E. Trainor (orally), Burton G. Shiro, Waterville, for defendant.

Before McKUSICK, C. J., GODFREY, NICHOLS, ROBERTS and WATHEN, JJ., and DUFRESNE, A. R. J.

GODFREY, Justice.

Plaintiff David F. Stevens seasonably appeals from a judgment entered in Superior Court, Waldo County, affirming the judgment of the District Court, Belfast. In an amended divorce judgment, the District Court ordered that custody of the two minor children be transferred from David F. Stevens to their mother, Nancy A. Stevens, and divided the parties' marital property. On this appeal, David Stevens challenges the change of custody order and the division of marital property made by the divorce court. We affirm the judgment of the District Court on the division of marital property. On the issue of child custody, however, we remand the case to the District Court for rehearing.

I.

In 1959 David Stevens received by intestacy a one-third share of his father's farm in Unity, Maine. The farm has been the source of his livelihood ever since. From his marriage to Nancy Rowe Stevens in 1960, three children were born: Ellen in 1961, Craig in 1966, and Raymond in 1967. In 1963 David, his mother and sister, each holding a one-third interest in the farm, transferred their respective interests to a straw third party who then transferred the fee to David and Nancy Stevens in joint tenancy. The evidence in the record does not indicate that any consideration ever passed among any of the parties.

By complaint filed in District Court on April 1, 1975, David Stevens instituted an action for divorce against Nancy Stevens, who then counterclaimed for divorce. A final judgment of divorce was entered in District Court on December 30, 1977, granting David Stevens a divorce from Nancy Stevens on the ground of cruel and abusive treatment and awarding David custody of the two boys and Nancy custody of the girl. Because the District Court did not divide the marital property at that time, David Stevens commenced an action in Superior Court pursuant to 19 M.R.S.A. § 166 (1981), seeking a conveyance of his ex-wife's interest in the jointly held farm property. In *Stevens v. Stevens*, Me., 390 A.2d 1074 (1978), this Court held that such an action was premature, pending final disposition of the marital property in District Court pursuant to section 722–A of title 19, because of the serious possibility, since realized, that the section 166 action would be mooted by that disposition.

In September, 1978, Nancy Stevens filed two motions in District Court; by the first, she sought a division of the marital farm property; by the second, she sought custody of the two boys. After a hearing in February, 1979, the District Court entered an amended judgment of divorce on March 29, 1979, in which custody of the two boys was granted to Nancy Stevens. The court awarded the farm to David Stevens on the condition that he pay Nancy Stevens $25,000 as her marital share. An appeal by Stevens to the Superior Court resulted in an order which, in effect, vacated the judgment and remanded the case for further consideration in the light of *Grishman v. Grishman*, Me., 407 A.2d 9 (1979) and *Tibbetts v. Tibbetts*, Me., 406 A.2d 70 (1979). The District Court thereupon made specific findings of fact about the ownership and value of various interests in the property of the parties, after which, on another appeal by David Stevens, the Superior Court affirmed the District Court's judgment.

II.

David Stevens first contends that there was no evidence of any change in the relevant circumstances sufficient to justify the District Court's order changing custody.

■ ■ 19 M.R.S.A. § 752 (1981) provides that the divorce court originally awarding custody of minor children shall retain jurisdiction over the parties and "may alter its order concerning the care, custody and support of the minor children from time to time as circumstances require . . . ." Although a custody order is by statute subject

to modification, it is nonetheless a judgment binding on the parties until the divorce court subsequently determines that the circumstances have changed substantially and that a change of custody is therefore justified. *Cyr v. Cyr*, Me., 432 A.2d 793, 796 (1981). In making such determinations, the divorce court must undertake an independent review of the circumstances and, if it finds that they have substantially changed, ascertain whether an alternative custody arrangement will be in the best interests of the child.[1] *See Ziehm v. Ziehm*, Me., 433 A.2d 725, 729 (1981); *Costigan v. Costigan*, Me., 418 A.2d 1144, 1146–47 (1980).

In order to prevail in this case, Nancy Stevens had the burden of demonstrating, first, that circumstances had changed substantially since the first custody hearing and, second, that the best interests of each of the two boys would be better served under an alternative custody arrangement. The two boys had been placed in the temporary custody of their father in 1975 following the commencement of the divorce action. After a hearing and the submission of a custody report by the Department of Human Services recommending that the father be given custody of the two boys, the District Court granted him permanent custody in 1976. The boys lived on the Unity farm with their father until the mother was granted custody in 1979 by the amended decree here at issue. While they were living with their father, the boys visited their mother on alternate weekends and during school vacations.

At the change-of-custody hearing, Nancy Stevens testified that the boys cry and do not want to return to their father after visiting with her, that they are often dirty and hungry, that they miss her cooking, that Craig is not doing very well in school, that he has threatened to run away, and that the boys continually express a desire to live with her and are unhappier than they were before the divorce. On cross-examination, Nancy Stevens admitted giving similar testimony at the 1976 custody hearing.

David Stevens testified about his relationship with the boys, who were about to turn twelve and thirteen. He did not believe that they were unhappy living with him on the farm. He said that they were required to perform typical farm chores but that he was careful not to overburden them. The boys' teachers testified that both were either average or above-average academically (that, in fact, Craig had improved) and were socially well-mannered, healthy and tidy. Finally, a neighbor, who had once been a social worker, testified that in her opinion the boys enjoy a healthy, loving relationship with their father.

After listening to the above-described testimony, the District Court judge led both boys into his chambers where an off-the-record discussion took place. Neither the parents nor their counsel were privy to what occurred in the conference between the two boys and the hearing judge. Because that in-chambers conference was unrecorded and no specific findings of fact were made reflecting what transpired, that discussion cannot be treated as part of the record and no assumptions about findings of fact can be predicated on it. Accordingly, we must disregard that conference entirely in reviewing the decision of the District Court.

---

1. We have previously articulated some of the factors a court should consider in making a custody determination:

   Without purporting to exhaust the range of potentially relevant considerations, we described the following circumstances as those which are generally pertinent to the custody decision: the child's age; the child's relationship with his parents and with others who contribute to his best interest; the parents' wishes as to custody; the child's preference (if the child is old enough to express a meaningful preference) regarding the custodial parent; the duration and adequacy of the current custodial arrangement; the desirability of maintaining continuity; the stability of the proposed custody scheme; the motivation of the parties competing for custody and their ability to nurture and guide the child; and the child's adjustment to his present surroundings.

   *Cyr v. Cyr*, 432 A.2d at 796.

■ Even if it is assumed that the trial judge found all facts necessary to support his decision that, as an original proposition, the mother was the preferable custodian of the boys, nothing in the record supports a finding of any substantial change in circumstances affecting the interests of the two boys between the 1976 and 1979 custody hearings. The only evidence possibly relevant to change was Nancy Stevens's testimony which repeated in substance her testimony at the first custody hearing; it does not support an inference of a change of circumstances. In contrast, the testimony of David Stevens, the boys' teachers, and the former social worker neighbor demonstrates that the boys were doing well under the existing custody arrangement and that they had a good relationship with their father. On the facts of record, the District Court could not have found a change of circumstances and, hence, abused its discretion in granting the change of custody. However, because the boys have been in the custody of their mother since entry of the District Court order in 1979, it becomes necessary to remand this case to the District Court for a new hearing in which Nancy Stevens is to have the burden of demonstrating that the best interests of the two boys will be served by the court's granting custody to her.

This case illustrates well why a substantial change of circumstances is required as a basis for a change in custodial orders. Without such a requirement, the temptation is strong for the parent who is denied custody to bring repeated motions, "shopping" for a judge who will revise the order. Repeated hearings on such motions put further strain on the relationship between the divorced parents and have an unsettling effect on the children that is itself not in their best interests. Such repeated hearings, without basis in any substantial change of circumstances, are certainly not in the best interests of an already overburdened judicial system.

### III.

David Stevens next contends that the District Court erred in concluding that the 360-acre Stevens farm was two-thirds marital property and in allocating the parties' respective marital shares. Appellant also challenges certain specific findings of fact made by the District Court. We uphold the District Court's disposition of the Stevenses' property.

■ The disposition of the spouses' property on divorce is governed by 19 M.R.S.A. § 722-A (1981), which directs the divorce court to set apart to each spouse his nonmarital property and then to divide their marital property in just proportions after considering all relevant factors.[2] Marital property is defined in subsection 722-A(2) as follows:

2. *Definition.* For purposes of this section only, "marital property" means all property acquired by either spouse subsequent to the marriage, except:

A. Property acquired by gift, bequest, devise or descent;

B. Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise or descent;

C. Property acquired by a spouse after a decree of legal separation;

2. Subsection 722-A(1) of title 19 provides as follows:

1. *Disposition.* In a proceeding: (a) for a divorce ... the court shall set apart to each spouse his property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors, including:

A. The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

B. The value of the property set apart to each spouse; and

C. The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children.

D. Property excluded by valid agreement of the parties; and

E. The increase in value of property acquired prior to the marriage.

Subsection 722–A(3) further provides that all property acquired by either spouse after marriage, whether held individually or jointly, is presumed to be marital property. That presumption may be overcome by showing that the property falls within one of the specifically delineated exceptions in subsection 722–A(2). *See Zillert v. Zillert,* Me., 395 A.2d 1152 (1978). Because the disposition of marital property is a matter committed to the sound discretion of the divorce court, that court's decision is reviewed only for abuse of discretion. *Bryant v. Bryant,* Me., 411 A.2d 391, 393 (1980).

In disposing of the parties' property in this case, the divorce court began with the 360-acre, jointly owned Stevens farm, which included a three-bedroom house, a barn and some smaller buildings. The court first set aside as the nonmarital property of David Stevens the one-third interest in the farm that he had originally received by intestate succession. The court then declared the other two-thirds interest in the farm to be marital property divisible under subsection 722–A(1). The court found the value of the farm property in 1978 and from that amount subtracted one-third as David Stevens' nonmarital interest. Then, taking into consideration all other items of marital property and an outstanding mortgage, the court assigned a value to the marital estate. Finding that Nancy Stevens had contributed equally with her husband to the acquisition and improvement of the marital estate, the divorce court awarded her $25,000 as her just share of the marital property—an amount roughly equal to the value of her one-half interest. David Stevens was awarded the entire farm on the condition he pay Nancy $25,000.

Appellant first contends that the divorce court erred in setting apart as his nonmarital property only a one-third interest in the farm. He argues that he acquired a one-half nonmarital interest in the farm in the 1963 straw transaction in exchange for property he had acquired before marriage (*i.e.,* the one-third interest he had received by intestacy), thereby rendering an entire one-half interest his nonmarital property. 19 M.R.S.A. § 722–A(2)(B). Nancy Stevens does not challenge appellant's assumption that an "exchange" took place within the meaning of subsection 722–A(2)(B).

■ Under subsection 722–A(2)(B), "[p]roperty acquired in exchange for property acquired prior to marriage ..." is excepted from the general presumption of subsection 722–A(3) that all property acquired during marriage is marital property. However, where some of the property exchanged in a transaction during marriage is nonmarital, the entire property or interest acquired is not necessarily as a result nonmarital property. *Tibbetts v. Tibbetts,* Me., 406 A.2d 70, 75 (1979). Only that portion of the property acquired during marriage in exchange for the nonmarital property should be set aside as nonmarital property. *Id. See generally* Comment, *The Maine Marital Property Act: The Duties of Divorce Courts and the Right to an Equitable Share of Marital Assets,* 31 Me.L.Rev. 333 (1980). Under the tracing or source-of-funds theory recognized in *Tibbetts,* an exchange of a nonmarital interest for other property after marriage will yield only a nonmarital interest proportionate in value in the newly acquired property.

■ If that concept is applied to the facts of this case, David Stevens is entitled under section 722–A(2)(B) to have not more than a one-third interest set apart to him as nonmarital property. We reach this conclusion by assuming, favorably to the appellant, but without deciding, that an "exchange" of property took place in 1963 within the meaning of subsection 722–A(2)(B).

With respect to the remaining two-thirds interest in the farm, David Stevens contends that he is entitled to a further non-

marital share under section 722–A(2)(A) on the theory that the straw transaction in 1963 resulted in a "gift" to him during marriage. The divorce court awarded him, in effect, half of that two-thirds interest as his share of marital property. Even if his contention be correct, David Stevens could not be entitled to more than an additional one-third of the property, over and above the one-third nonmarital share correctly set apart to him as traceable to his original intestate interest. For if he were to receive one-half of the two-thirds interest as his nonmarital property on the theory of a gift, Nancy Stevens would become entitled to the other half of the two-thirds interest as *her* nonmarital property on the same theory. It is therefore unnecessary to consider his contention that the 1963 transaction should be treated as creating a "gift" to him of an interest in the farm.[3]

■ In his final contention on appeal, David Stevens challenges certain findings of fact made by the divorce court concerning details in the division of marital property. After carefully reviewing the record, we are satisfied that, overall, the divorce court fairly and justly divided the marital property of the parties and that no modification of the judgment in that respect is necessary or desirable.

The entry is:

Appeal sustained in part and denied in part.

Judgment of Superior Court vacated. Remanded for entry of judgment as follows:

"Judgment of the District Court vacated insofar as it grants custody of the two boys to Nancy Stevens. Case remanded to District Court for further proceedings consistent with the opinion of the Law Court herein.

"Judgment of the District Court affirmed insofar as it relates to the division of marital property."

Each party to bear his or her own costs of this appeal.

All concurring.

---

**3.** *Cf. Grant v. Grant,* Me., 424 A.2d 139 (1981) (where an evenly divided Court addressed the issue whether property given to both spouses as joint tenants during marriage was excepted from the definition of marital property by virtue of subsection 722–A(2)(A)).