MUTUAL FIRE INS. CO.

v.

Marjorie RICHARDSON, Personal
Representative of the Estate
of Jody Hallman.

Supreme Judicial Court of Maine.

Argued March 15, 1994.
Decided April 15, 1994.

ren's in-house medical department in this instance did not constitute a payment *pursuant to*

*section 51–B.*

James D. Poliquin (orally), Norman, Hanson & Detroy, Portland, for plaintiff.

J. Michael Conley (orally), Conley, Haley & O'Neil, Bath, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

RUDMAN, Justice.

Marjorie Richardson, Personal Representative of the Estate of Jody Hallman (hereinafter "Hallman"), appeals from the summary judgment entered in Superior Court (Sagadahoc County, *Brodrick, J.*) in favor of Mutual Fire Insurance Company ("Mutual"). Richardson challenges Mutual's use of a judgment entered in Hallman's divorce action collaterally to estop Hallman from denying responsibility for the burning of her house. Mutual cross-appeals contending that the trial court erred in denying its claim for counsel fees and costs of investigation. We affirm the judgment of the Superior Court.

Hallman's home burned on April 27, 1990, ten days after she insured the property with Mutual. Hallman filed a claim with Mutual, and Mutual paid to Hallman a total of $21,-153.28, part directly and part to the bank holding the mortgage on Hallman's home. Penny White, a friend of Hallman, later admitted that she had set the fire, and was indicted for arson. White claimed that Hallman had asked her to burn the house. Hallman was eventually indicted as well, but because Hallman died while the charges were pending, the indictment was dismissed.

In late January 1991, Mutual filed a complaint against Hallman, alleging that she had arranged the fire that destroyed her house and seeking recovery of the money that Mutual expended. Hallman timely answered and counterclaimed, and Mutual timely replied to Hallman's counterclaims.

In July 1991, while the lawsuit between Hallman and Mutual was pending, a divorce was granted to Hallman and her husband. As part of its divorce judgment, the District Court (Bath, *Pease, A.R.J.*) found that Hallman was "responsible for the burning of the Bowdoin residence and the loss of any opportunity for the parties to enjoy the value of

the marital portion of that asset or any income that might be derived from its sale or rental." Partly because of this "economic misconduct," 19 M.R.S.A. § 721(1)(M) (Supp. 1993), the court awarded to Hallman only nominal alimony.

In the meantime, the dispute between Hallman and Mutual plodded forward. The case was scheduled for a jury trial in February 1992, and a pretrial order was entered, but Hallman's death on February 9, 1992, forced a delay. The matter was rescheduled for September, but delayed again. Then, in September 1992, Mutual moved to amend its reply to Hallman's counterclaim to assert that the divorce judgment collaterally estopped Hallman from disputing her responsibility for the fire. Based on the assertion of collateral estoppel, Mutual moved for a summary judgment. Hallman opposed the motion to amend and the motion for a summary judgment on the grounds that Mutual's assertion of collateral estoppel was untimely and that collateral estoppel was inappropriate on the merits. The court granted Mutual's motions and entered a judgment for the amounts paid by Mutual to Hallman and her mortgagee. Hallman appeals, and Mutual cross-appeals, requesting as damages for Hallman's breach of the insurance contract its attorney fees, and its investigative costs.

### I. The Amendment

First, Hallman challenges the decision to allow Mutual to amend its pleadings. Mutual did not need to amend its pleadings, however, to assert offensively the divorce judgment. Collateral estoppel is an affirmative defense, M.R.Civ.P. 8, but Mutual used the divorce judgment to support its motion for a summary judgment on its own claim, not as a defense to Hallman's counterclaim.

Even if an amendment of the pleadings had been necessary, we would find no abuse of discretion in the trial court's decision to allow the amendment. *See Spickler v. York*, 505 A.2d 87, 88 (Me.1986) (collateral estoppel not waived as an affirmative defense by failure to plead when the prior judgment was not entered until after the pleadings were filed). Rule 15 of the Maine Rules of Civil Procedure provides that motions to amend pleadings shall be freely granted. M.R.Civ.P. 15(a). Whether to grant a motion to amend is left to the discretion of the trial court. *Diversified Foods, Inc. v. First Nat'l Bank of Boston*, 605 A.2d 609, 616 (Me.1992). *See also* Field, McKusick & Wroth, *Maine Civil Practice* § 15.1 (2d ed. Supp.1981) (citing *Jones v. Suhre*, 345 A.2d 515, 518 n. 5 (Me.1975)).

" 'If the moving party is not acting in bad faith or for delay, the motion will be granted in the absence of undue prejudice.' " *Diversified Foods*, 605 A.2d at 616 (quoting 1 Field, McKusick & Wroth, [*Maine Civil Practice* ] § 15.4 (2d ed. 1970] ). There is no evidence or allegation of bad faith or intentional delay by Mutual, and Hallman's assertion of undue prejudice is unpersuasive. The passage of time alone is not a ground to deny a motion to amend. *Diversified Foods*, 605 A.2d at 616. Hallman argues that if Mutual had filed its motion while she were still alive, she would have been able to show that applying the divorce judgment collaterally to estop her from contesting responsibility for the fire is fundamentally unfair. There is, however, little in the record to suggest that Hallman is not responsible for the burning of her house. Despite her death, Hallman opposed the assertion of collateral estoppel against her as effectively as the facts allowed. *See* Field, McKusick & Wroth, *Maine Civil Practice* § 15.4 (2d ed. 1970) ("Obviously, prejudice means something more than an increased likelihood of defeat. . . ."). Neither was Hallman unduly prejudiced by preparing for a trial that was never held. Certainly, an earlier motion for a summary judgment would have saved more time and effort, but Mutual's motion prevented a needless trial.

Hallman also emphasizes that Mutual's motion came after the matter had been twice scheduled for trial, and after the court had entered a pretrial order requiring the parties to identify the issues for trial. Hallman maintains that Mutual waived its right to assert collateral estoppel by failing to raise it in the report of conference of counsel. That contention is also unpersuasive. Rule 15 allows post-trial amendment of the pleadings to conform to evidence adduced at trial. M.R.Civ.P. 15(b). Mutual responded to the

pretrial order in a timely fashion, and later moved to amend its pleadings. The trial court acted within its discretion when it granted Mutual's motion to amend.

## II. Collateral Estoppel

■■■ Hallman attacks the use of the divorce judgment against her by denying the existence of the underlying elements of collateral estoppel. A prior judgment can only be used for collateral estoppel if "the identical issue necessarily was determined by a prior final judgment, and the party estopped had a fair opportunity and incentive to litigate the issue in the prior proceeding." *State Mutual Ins. Co. v. Bragg*, 589 A.2d 35, 37 (Me.1991). Collateral estoppel is "meant to serve the ends of justice not to subvert them." *Pattershall v. Jenness*, 485 A.2d 980, 983 (Me.1984) (quoting *Hossler v. Barry*, 403 A.2d 762, 769 (Me.1979)). Its application is determined on a case-by-case basis. *Hossler*, 403 A.2d at 769.

Hallman asserts that the determination of her responsibility for the fire was not essential to the divorce judgment. The divorce court, however, granted Hallman almost no alimony, in part because it found that she was responsible for the fire. The court stated that:

> The Legislature has listed several factors the court should consider in determining the issue of alimony. 19 M.R.S.A. § 751 [sic] (Supp.1990). These include, *inter alia*, ability to pay, employment and income history and potential, and economic misconduct resulting in diminution of marital property or income. In this case, the plaintiff is responsible for the burning of the Bowdoin residence and the loss of any opportunity for the parties to enjoy the value of the marital portion of that asset or any income that might be derived from its sale or rental. Although neither party is employed, the plaintiff receives social security benefits and the defendant is self-employed to a limited degree and operates the Richmond farm. Neither party has proven opportunities for future employment and the defendant's future earnings are substantially encumbered by the provisions of this judgment concerning payment of debt. . . .

There is no doubt that the issue was litigated and decided in the divorce action. *See Beegan v. Schmidt*, 451 A.2d 642, 644 (Me.1982). By statute, economic misconduct is a factor in the award of alimony. The court relied on that factor. Hallman's responsibility for the fire was therefore essential to the divorce judgment.

Hallman contends that she lacked opportunity and incentive to litigate the issue fully. Certainly she had opportunity. She was represented by counsel at the divorce hearing. Her attorney cross-examined White and for tactical reasons—the pending criminal matter—chose to advise Hallman to assert her Fifth Amendment right to refuse to answer questions that might incriminate her. By choosing not to testify, Hallman exposed herself to comment by counsel and to the factfinder drawing an appropriate inference from Hallman's failure to dispute her friend's accusation. *See* M.R.Evid. 513(a).

Hallman argues that misconduct is irrelevant in a no-fault divorce, and therefore she did not believe the testimony by White was relevant. Hallman relies heavily on *Henricksen v. Cameron*, 622 A.2d 1135 (Me.1993), for the proposition that fault is not an issue in a divorce proceeding. That is true as far as it goes, but the issues in *Henricksen* are not the same as those in Hallman's case. *Henricksen* addressed the question whether a divorce judgment was a *res judicata* bar to a subsequent intentional infliction of emotional distress action by a person against her former spouse. *Id.* at 1141. We held that a divorce judgment did not, and could not, resolve this particular claim, and therefore the divorce judgment could not be *res judicata* for her subsequent tort claim. *See also Skelton v. Skelton*, 490 A.2d 1204, 1207 (Me. 1985) (fault not at issue in alimony determination).

■■■ Fault in general may be irrelevant for the grant of a judgment of divorce, but economic misconduct is statutorily relevant to an award of alimony. 19 M.R.S.A. § 721(1)(M) (Supp.1993). While courts no longer need to decide whether one spouse was the guilty party in a divorce proceeding, if one spouse diminishes the marital property through

some form of economic misconduct, the court may consider that fact when awarding alimony. *See* Sheldon & Mills, *In Search of a Theory of Alimony*, 45 Me.L.Rev. 283, 307 n. 70 (1993) (relationship between alimony and interspousal torts more complex than the rule allowing economic misconduct as consideration in alimony award).

 Thus Hallman had financial incentive to litigate the issue; she was disabled, living on social security, and needed whatever alimony might be awarded to her. With criminal charges pending, and the present action pending, Hallman should have recognized that she had other incentives as well. Hallman tries to excuse her failure to litigate the issue further by stating that her divorce counsel was "unfamiliar with the instant case," but mistakes by counsel are attributed to the client. *See Orlandella v. O'Brien*, 637 A.2d 105, 106 (Me.1994) (knowledge of counsel attributed to client).

Hallman also contends that the divorce action lacked the procedural protections in a civil action like the one now before us. Hallman argues that her opportunity for discovery was limited in the divorce forum. That contention is only partly true. Discovery is limited in the divorce forum to "issues of alimony, support, counsel fees and disposition of property . . . but on other issues shall be had only by order for good cause shown." M.R.Civ.P. 80(g). Thus, information regarding the cause of the fire would have been discoverable because it was relevant to an alimony issue, 19 M.R.S.A. § 721(1)(M), and any issue could have been explored through discovery with the court's permission. In sum, Hallman musters little to generate sympathy for her claim of undue prejudice. The trial court appropriately allowed Mutual to amend its pleadings and properly awarded Mutual a summary judgment.

### III. Mutual's Damages

Finally, Mutual cross-appeals and requests that we vacate the court's award of damages and enter an award that would include Mutual's attorney fees and investigative costs. An award of damages, however, will generally not be disturbed on appeal. *Paine v. Spottiswoode*, 612 A.2d 235,

239 (Me.1992). There is no statutory or contractual basis for Mutual's request that it be awarded its attorney fees and the costs it incurred in investigating the fire. The trial court did not abuse its discretion when it concluded that attorney fees and investigative costs were not consequential damages as a result of Hallman's breach of the insurance contract. Mutual's argument for the creation of a new rule allowing the award of attorney fees and investigative costs to an insurer when the insured engages in obvious wrongdoing should be addressed by the Legislature. We affirm the trial court's award of damages to Mutual. *Bayley v. Bayley*, 602 A.2d 1152, 1154 (Me.1992).

The entry is:

Judgment affirmed.

All concurring.