STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE
CUMBERLAND, SS
CLERK'S OFFICE

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-00-52

MICHAEL R. COPPERSMITH,

Apr 12   1 16 PM '01 REC-CUM- 4/12/2001

Plaintiff-Appellee

v.

DECISION ON APPEAL

DEBRA J. COPPERSMITH,

Defendant-Appellant

Defendant-Appellant Debra Coppersmith appeals from the April 6, 2000 District Court order modifying the divorce judgment and ordering the primary residence of the parties' son Kevin Coppersmith be changed to his father's home. For the following reasons, Debra Coppersmith's appeal is denied.

## FACTUAL BACKGROUND

The two parties were divorced on August 27, 1992. Originally, Ms. Coppersmith provided the primary residence for the two children of the marriage, Jennifer and Kevin. Mr. Coppersmith filed a motion to amend the divorce judgment on May 20, 1999, seeking to change the primary residence of both children. He also filed a motion for appointment of a guardian ad litem on June 30, 1999. Guardian Ad Litem ("GAL") Kenneth Altshuler was appointed on July 28, 1999. Case Management Officer ("CMO") Lisa Friedlander issued an Interim Order Schedule of Parental Rights and Responsibilities Pending Final Hearing on August 27, 1999, ordering Kevin's primary residence pending hearing to be with Debra in Gorham and Jennifer's primary residence to be with Michael in Cumberland. The GAL sent counsel for both parties a letter dated August 20, 1999, recommending that

both Kevin and Jennifer reside permanently with their father.

Two hearings were held in the District Court in which both parties were represented by counsel. The first hearing, held on January 13, 2000 before Judge Goranites, consisted only of the GAL's testimony. This hearing was suspended pending additional investigation into allegations of domestic violence raised by Debra's attorney. At the suggestion of Judge Goranites, the parties participated in a psychological evaluation conducted by Dr. Roger Ginn to determine if any personality traits relative to domestic violence could be identified.

At the second hearing before Justice Stephen Perkins on March 28, 2000, both parties were present and represented by counsel. The Court heard testimony from the GAL, Michael and Debra, and Kevin's special education teacher Joscelyn Moore. Because the parties agreed that Jennifer would live with her father, the central issue was who should provide Kevin's primary residence.

The GAL testified that he initially became involved with the parties in 1993 at the time of a previous request for a modification of the divorce judgment. At that time he recommended no change to the children's primary residence. His second report, issued December 17, 1999, recommended changing Kevin's primary residence to Michael due to significant changes since the earlier report. Primarily, the change in circumstances was the beginning of Kevin's education. During the investigation upon which this report was based, the GAL met with both parties individually, Jennifer and Kevin, four of Kevin's teachers as well as his guidance counselor, a number of neighbors and friends, the mother of Kevin's best friend in Cumberland,

2

Roger Ginn, the psychological examiner, and Deb Sheehan, the counselor for the parties and the family.

The GAL testified that, from the perspective of the teachers he interviewed, Debra was unable or unwilling to address Kevin's educational needs. Kevin's second grade teacher, Jackie Taylor, was supportive of Kevin primarily residing with Michael because Michael was the parent primarily responsible for ensuring Kevin completed his homework. Karen Alden, Kevin's guidance counselor, advocated fairly strongly for Kevin to live with Michael. She told the GAL that Kevin had expressed to her that he wanted to live with his father and that she felt splitting time between the two homes would be difficult for him and would not address his educational needs. Kevin's current teacher did not take a position, but did tell the GAL that both parents were making a significant effort to work with Kevin. Joscelyn Moore, Kevin's special education teacher at Gorham, felt that the Cumberland special education system was better for Kevin than Gorham's system.

Kevin told the GAL that he really missed his sister and wished to live with her. Deb Sheehan, the therapist, told the GAL that Kevin repeatedly told her he would like to live with his sister. Ms. Sheehan believed this was Kevin's way of indicating a preference to live with his father. However, both Ms. Sheehan and the GAL felt that Kevin was not quite mature enough to make a meaningful preference.

The GAL testified that he felt it would be better for the children if Debra was more trusting of her relationship with them and was not as concerned that spending time with Michael meant taking the children away from her. The GAL

3

had not seen a strong effort on Debra's part to enhance the time that Kevin and Jennifer spent together since Jennifer moved to Michael's home. He also felt that Debra places her own needs, in terms of her relationship with her children, above the needs of Kevin.

Debra's attorney introduced Kevin's most recent report card into evidence. This report card consisted entirely of marks of 1's and 2's. A "1" means "consistently" and a "2" means "developing." Kevin did not receive any marks of "3", or "area of concern." Debra's attorney attacked the credibility of Ms. Moore, highlighting her conflicts with the Gorham School District. He also submitted Dr. Roger Ginn's psychological report which was favorable to Debra.

In its Order Modifying Divorce Judgment dated April 6, 2000, the District Court concluded that there was a substantial change in circumstances and that it would be in the best interest of Kevin and Jennifer Coppersmith to reside primarily with their father. In that order, the District Court made the following findings: (1) the parties are in agreement that Jennifer's primary physical residence should be with her father; (2) Mr. Coppersmith was best able to meet Kevin's educational needs; (3) Kevin missed his sister and wished to spend more time with her; (4) the GAL, with whom the family's current therapist agrees, recommends that the primary residence of both children be with their father; and (5) Cumberland's special education program would be more effective in meeting Kevin's needs. The court subsequently denied Ms. Coppersmith's request for findings of fact and conclusions of law.

4

## DISCUSSION

### I. Abuse of Discretion

The District Court did not abuse its discretion in ordering that it was in Kevin's best interest to reside primarily with his father. Either parent may move to modify an order regarding parental rights and responsibilities. 19-A M.R.S.A. § 1657(1)(A) (1998). A motion for modification of child custody requires a court to analyze a single question: "Has there occurred since the prior custody order a change in circumstances sufficiently substantial in its effect upon the best interest of the children as to justify a modification of the custody arrangement?" Villa v. Smith, 534 A.2d 1310, 1312 (Me. 1987). This question is heavily fact-bound and must be committed to the sound judgment of the trial court who is able to hear witnesses describe the relevant circumstances of the case. Cloutier v. Lear, 1997 ME 35, ¶ 4, 691 A.2d 660, 662; Villa, 534 A.2d at 1311. Accordingly, the trial court's evaluation of the substantiality of the effect on the children's interests is reviewed for an abuse of discretion. Cloutier, 1997 ME 35, ¶ 4, 691 A.2d at 662. An abuse of discretion exists only where plain and unmistakable injustice is instantly apparent. Spencer v. Spencer, 1998 ME 252, ¶ 14, 720 A.2d 1159, 1163.

Ms. Coppersmith bases her argument that the District Court abused its discretion on four grounds. First, she argues that the District Court overlooked exhibits showing that no change of circumstances existed. The March 28, 2000 transcript reflects the admission of Kevin's educational plan, his most recent report card and the psychological report issued by Dr. Roger Ginn. The April 6, 2000 order

5

specifically reflects that Justice Perkins did consider Kevin's report card but did not find it persuasive. Ms. Coppersmith has not presented any evidence that the District Court did not consider the other exhibits.

Second, Ms. Coppersmith argues that her agreement that Jennifer should live with the Plaintiff should not have been used as a substantial change of circumstances because it was agreed to after the Plaintiff's motion. She also argues that the fact that Kevin misses his sister should not warrant a complete change of residency. It is clear from the District Court order that Jennifer's change of residence did not provide the sole foundation for changing Kevin's primary residence, but was instead but one of several considerations.

Ms. Coppersmith's third argument is that there was no evidence before the District Court that the Plaintiff is better able to meet Kevin's special educational needs than the Defendant. The District Court found that Mr. Coppersmith has been intimately involved and supportive of the educational situation of both his children. This finding is supported in the record by the testimony of both the GAL and Ms. Moore.

The final argument is that the record does not contain factual evidence supporting the theory that Cumberland's school system offers an educational program that would be more effective in assisting Kevin's special needs than his current program in Gorham. Although it is true that Ms. Moore had no first-hand knowledge of the Cumberland special education program, the trial court expressly stated that he found her testimony to be compelling. As the court best able to

6

evaluate witness testimony, its determination is entitled to deference. See Tarbuck v. Jaeckel, 2000 ME 105, ¶ 18, 752 A.2d 176, 181.

## II. GAL Appointment

A court's decision to appoint a guardian ad litem is reviewed for abuse of discretion. Kinter v. Nichols, 1999 ME 11, ¶ 10, 722 A.2d 1274, 1277. Pursuant to statute, a court has authority to appoint a guardian ad litem in contested cases in which a minor child is involved or whenever the court has reason for special concern as to the child's welfare. 19-A M.R.S.A. 1507(1) (1998); see also Kinter, 1999 ME 11, ¶ 8, 722 A.2d at 1277. In determining whether appointment of a GAL must be made, a court must consider

A. The wishes of the parties;
B. The age of the child;
C. The nature of the proceeding, including the contentiousness of the hearing;
D. The financial resources of the parties;
E. The extent to which a guardian ad litem may assist in providing information concerning the best interest of the child;
F. Whether the family has experienced a history of domestic abuse;
G. Abuse of the child by one of the parties; and
H. Other factors the court determines relevant.

19-A M.R.S.A. § 1507. By order dated July 28, 1999, CMO John Kennedy appointed Kenneth Altshuler as GAL, expressly stating that the parties were in agreement with the terms of the order. Similar to Kinter, although the CMO did not expressly refer to the statute, he did consider the factors. See Kinter, 1999 ME 11, ¶ 9, 722 A.2d at 1277. The court was informed by Mr. Coppersmith's motion and Ms. Coppersmith's affidavit in opposition of the wishes of the parties, the ages of the children, the

7

nature of the proceeding, the financial resources of the parties, and the extent to which the GAL could assist in providing information concerning the children's best interests. No allegations of abuse were raised. Accordingly, the CMO did not abuse his discretion in appointing the GAL.

Citing <u>Stevens v. Stevens</u>, 448 A.2d 1366 (Me. 1982), Ms. Coppersmith argues that the District Court erred by not requiring the Plaintiff to submit a detailed factual response to the Defendant's objection showing a substantial change of circumstances prior to the GAL's appointment. That case does not address the issue of GAL appointment, however. <u>See</u> <u>id</u>. (holding that the district court abused its discretion in granting a change of custody because the record did not reflect a substantial change in circumstances). In addition, the statute does not require a court to consider whether a substantial change of circumstances has occurred prior to appointing a GAL. <u>See</u> 19-A M.R.S.A. § 1507.

### III. GAL's Delay in Submitting Written Recommendations

Whether the GAL's delay in submitting his written recommendations was a violation of 19-A M.R.S.A. § 1507(5) is not properly before the Court. <u>See</u> <u>KeyBank Nat'l Ass'n v. Sargent</u>, 2000 ME 153, ¶ 14, 758 A.2d 528, 533 (noting that issues raised for the first time on appeal are unpreserved). Even if the issue is properly before the Court, however, the GAL's failure to provide written recommendations within the allotted time frame is harmless error. 19-A M.R.S.A. § 1507(5) provides

> A written report of a guardian ad litem may be admitted as evidence in the proceeding for which the guardian ad litem was appointed only if the party seeking admission of the report has furnished a copy to all parties at least 14 days prior to the

hearing. *The report may not be admitted as evidence without the testimony of the guardian ad litem if a party objects to the admittance of the report at least 7 days prior to the hearing.*

(Emphasis added). Although the record does not reflect the Appellant objected to admission of the GAL's report, the GAL did testify in this case and was subject to cross-examination at both the January 13, 2000 and March 28, 2000 hearings. Therefore, any error was harmless. See M.R. Civ. P. 61.

## IV. Competency of Counsel

### A. Closing Argument

The Appellant argues that she was not given the right to offer closing argument at the end of the March 28, 2000 hearing. After both sides had rested, the District Court stated

> What I would like to do is meet with counsel briefly, because I need to talk with you about another case you have on the list for today, and I need--got a little scheduling arrangement I want to discuss with you. *At the same time, I'll talk with you both about a manner of closing the case out in terms of any argument you wish to pose at this time.* Why don't we take a brief recess, and I'll discuss with you privately--

Transcript of March 28, 2000 Hearing at 199-200 (emphasis added). This excerpt from the transcript reflects that the District Court did indeed mention closing arguments to both counsel. Ms. Coppersmith does not offer any additional evidence to establish that her attorney was precluded from giving a closing argument. Even if her attorney's failure to make a closing argument was a mistake, such mistakes are attributed to her. See Mutual Fire Ins. Co. v. Richardson, 640 A.2d 205, 209 (Me. 1994).

## B. Failure to Call Witnesses

Ms. Coppersmith charges her attorney with failure to call witnesses that could have discredited the recommendation made by the GAL and would have shown that Ms. Moore was not a credible witness. She states that she gave her attorney two pages of witness names and numbers and made up a release of information authorizing him to speak with those persons. The Appellant also asserts that she was not personally asked by the Court to call witnesses. Any mistake by defense counsel in failing to call additional witnesses at the March 28 hearing is attributed to Ms. Coppersmith and is not a basis for reversing the District Court order. See id.

## C. Agreements and Instructions not on the Record

Although Ms. Coppersmith alleges that the court interfered with her due process rights by failing to place agreements made and instructions given in chambers on the record, she does not identify what agreements and instructions were not placed on the record. Further, as the Appellant concedes, her attorney was present during in-chambers conferences and knew her position. Knowledge of any agreements made on the Appellant's behalf in chambers as well as any instructions given by the District Court in the presence of her counsel are attributed to her. See Orlandella v. O'Brien, 637 A.2d 105, 106 (Me. 1994). The District Court therefore did not violate her due process rights.

## VI. Due Process

The Maine and federal Constitutions guarantee due process prior to state

10

deprivation of a constitutionally protected interest. See U.S. Const. amend. XIV, § 1 Me. Const. art. 1, § 6-A; Kirkpatrick v. City of Bangor, 1999 ME 73, ¶ 13, 728 A.2d 1268, 1271. "The fundamental requirement of due process is an opportunity to be heard upon such notice and proceedings as are adequate to safeguard the right which the particular pertinent constitutional provision purports to protect." In re Alexander D., 1998 ME 207, ¶ 13, 716 A.2d 222, 226 (quoting McNaughton v. Kelsey, 1997 ME 182, ¶ 6, 698 A.2d 1049, 1052).

Although Ms. Coppersmith identifies many ways the District Court allegedly violated her right to a fair hearing,[1] the record reflects that the rules and procedure applied by the District Court provided her with all the procedure that was her due. Although two hearings on the Appellee's motion occurred, the record indicates that not only was Justice Perkins presented with the same witness as testified at the January 13, 2000 hearing, but that he also heard from additional witnesses and received evidence in the form of exhibits. The District Court's determination was based on substantial evidence in the record. Further, Ms. Coppersmith was represented by counsel at all times during the proceedings. This attorney advocated her position by calling witnesses, cross-examining and discrediting the opposing

---

1 Ms. Coppersmith alleges that the District Court violated her right to a fair hearing in the following ways: the Defendant was left out of discussions in chambers; the Plaintiff's motion was not followed by only one judge; the judges did not ensure that the GAL followed their instructions; court-ordered mediation did not occur; the GAL was not required to support his testimony with tangible evidence; the judge's notes were not in the case file for review; dates were not selected for up-coming hearings; the parties' attorneys did not give closing arguments; the court failed to "melt together" the two proposed orders submitted by the Plaintiff and Defendant; the court failed to give an explanation of its findings; the court failed to mention the psychological evaluation in its final ruling; instructions given and agreements made in chambers were not placed on the record; and no transitional period was allowed for Kevin.

11

party's witnesses and introducing favorable exhibits into evidence. As stated previously, any neglect or mistake of the Appellant's attorney is attributed to her. See Mockus v. Melanson, 615 A.2d 245, 247 (Me. 1992).

## VIII. Appellant's Request for Indemnification

The Appellant requests the Court to award her indemnification of her costs, disbursements and lost time from work pursuant to M.R. Civ. P. 66(d)(3)(C). Rule 66(d)(3) states that the "court may impose any of the following sanctions on a person *adjudged to be in contempt* after a proceeding seeking remedial sanctions." (Emphasis added). Because this rule requires a person first to be adjudged of contempt, the Appellant is not entitled to any indemnification.

## IX. Attorney's Fees

The Appellee asks this Court to remand to the District Court the question of whether he is entitled to attorney's fees for defense against this appeal. Pending a divorce action, a court may order either spouse to pay to the other attorney's fees. 19-A M.R.S.A. § 904(1) (1998). The scope of this statute encompasses attorney's fees for defense against appeal. Parker v. Parker, 598 A.2d 446, 448 (Me. 1991). A motion for post-appeal attorney's fees need not necessarily be addressed to the trial court. Libby v. Libby, 658 A.2d 65, 65 (Me. 1995). Because this Court is best able to evaluate the merits of this appeal, the Appellee is ordered to direct any motion for attorney's fees in the Superior Court.

The entry is

12

Appellant Debra Coppersmith's appeal is DENIED.

Appellee Michael Coppersmith is ordered to file any motion for attorney's fees for defense against this appeal in the Superior Court.

Dated at Portland, Maine this 10th day of April, 2001.

Robert E. Crowley
Justice, Superior Court

13

Date Filed __06-07-00__ __CUMBERLAND__ Docket No. __AP 00-052__

County

Action __APPEAL FROM DC – DIVORCE__

MICHAEL R. COPPERSMITH                    DEBRA G. COPPERSMITH

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| MARIANNA FENTON, ESQ    655-2451<br>PO BOX 1496, WINDHAM ME 04062<br><br>BARRY T. WOODS ESQ<br>PO BOX 7044<br>portland me 04112   773-1751 | PRO SE    892-5457<br>14 DUNLAP RD, GORHAM ME 04038 |

| Date of Entry | |
|---|---|
| 2000<br>June 12 | Received 06-07-00:<br>Defendant's Notice of Appeal to Superior Court filed.<br>All paperwork received from 9th District Court, Southern Cumberland County<br>(POR 92-DV-284). |
| June 13 | On 6-13-00.<br>Briefing schedule mailed. Appellant's brief due 7-17-00. |
| June 16 | Received 6-15-00.<br>Defendant's Motion to Extend Briefing Schedule filed. |
| June 20 | On 6-16-00.<br>As to Defendant's Motion to Extend Briefing Schedule:<br>Granted until transcription is received. (Crowley, J.)<br>Copies mailed Marianna Fenton, Esq. and Debra Coppersmith, 14 Dunlap Rd.,<br>Gorham, ME 04038 on 6-20-00. |
| July 26 | Received 7-19-00.<br>Correspondence from Debra Coppersmith informing court that Michael<br>Coppersmith is not to make any representations on her behalf regarding the<br>children, filed. |
| Sept. 1<br>" " | Received 8-1-00.   (NOT PREVIOUSLY DOCKETED)<br>Transcript with updated docketed entries from District Court filed.<br>On 9-1-00.<br>Briefing Schedule Mailed.  Appellant's brief due 10-10-00. |
| Sept. 13 | Received 09/13/00:<br>Entry of Appearance filed.<br>Barry T. Woods, Esq. enters his appearance as counsel for plaintiff,<br>Michael R. Coppersmith. |